RAYMOND NOYES *vs.* RUTH C. HALE & others, executors.

Essex. Nov. 8, 1883. — June 23, 1884. W. ALLEN & HOLMES, JJ., absent.

A tax upon the personal property of a person, who does not bring in a list to the assessors, as required by the Gen. Sts. c. 11, § 22, may be assessed on "personal property," without any enumeration of particular kinds or items of property, if the assessors are unable to ascertain such particulars; and an additional assessment upon personal property, discovered by the assessors to have been omitted from the last annual assessment, as authorized by the St. of 1868, c. 320, may be laid in the same manner.

Assessors of taxes cannot be said to "discover" that the property of a person liable to taxation has been omitted from the last annual assessment, within the meaning of the St. of 1868, c. 320, until they become satisfied as a board that there has been such omission; and private information of the omission obtained by one member of the board, before the tax list and warrant have been committed to the collector, is not sufficient.

The provision of the St. of 1868, c. 320, requiring that the additional tax therein authorized, upon property discovered by the assessors to have been omitted from the last annual assessment, shall be entered in the tax list of the collector, may be complied with by entering the same in a separate book, or on a separate paper, with a new warrant for its collection.

An additional tax, authorized by the St. of 1868, c. 320, upon property discovered by the assessors to have been omitted from the last annual assessment, is properly assessed to the owner of the property on the first day of May, although he has died between that day and the date of the new assessment, and not to his executor.

In an action for the amount of a tax assessed, under the St. of 1868, c. 320, upon property discovered by the assessors to have been omitted from the last annual assessment, a statement, made by one assessor to his associates at a meeting of the board, of a private conversation between him and the executor of the deceased owner of the property, in relation to its valuation, is admissible in evidence; and evidence that the conversation was not stated truly is immaterial.

CONTRACT, by the collector of taxes of Haverhill, for the amount of a tax assessed, in 1881, upon the estate of Ezekiel J. M. Hale, the defendants' testator. Trial in the Superior Court, without a jury, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

The defendants' testator was, on May 1, 1881, and for many years previously had been, an inhabitant of Haverhill, where he died on June 4, 1881. The defendants were appointed executors of his will in August, 1881, and filed an inventory of the estate on November 1, 1881, in the Probate Court.

The assessors of Haverhill for the year 1881, before proceeding to make an assessment of taxes for that year, caused seasonable and sufficient notice thereof to be given to the inhabitants of said city, such notice requiring said inhabitants to bring in to the assessors true lists of all their polls, and estates both real and personal, not exempted from taxation, by publication of said notice daily from the first of April to the last of May, 1881, in two daily newspapers, and on four successive weeks, from May 6 to May 27, 1881, in a weekly newspaper, published and circulated in said city.

The testator, within the time specified in a notice of a previous year, had brought in to the assessors a list of his real and personal property, accompanied by the following statement: "This is all the property upon which I am liable to pay taxes in Haverhill." Said list and statement were not accompanied by any oath or offer to make oath to the same, nor did the assessors require him to make oath to the same.

In 1881, the testator brought in to the assessors no statement of his estate taxable in Haverhill. The assessors valued his real estate at $35,650 and his personal estate at $14,250, and assessed

thereon to him a tax of $840.32, which was demanded by the plaintiff, and was paid by the defendants, on September 2, 1881.

The assessment of taxes on the real and personal estate was entered in a list of valuations of, and assessment of taxes on, estates of inhabitants of Haverhill, for the year 1881, before the taxes so assessed were committed for collection; and said list, contained in books, exhibited · said valuations and assessments, and was deposited for public inspection, as required by the Gen. Sts. *c.* 11, § 34.

The assessment on the estate of the testator was exhibited in a part of said list appropriated by the assessors to the valuations of, and assessments on, estates of inhabitants of the city in the ward of which the testator was, on May 1, 1881, an inhabitant. At the close of said list, all of the assessors, on September 12, 1881, subscribed and took the oath required by the Gen. Sts. *c.* 11, § 36, and thereupon, on the same day, committed said tax-list, and a warrant signed by all of the assessors, and in form as required by the Gen. Sts. *c.* 11, § 39, to the plaintiff.

. On the evening of September 12, 1881, and immediately after said list had been subscribed and sworn to, and the warrant had been committed to the plaintiff, the assessors proceeded to make " additional " valuations of, and " additional " assessments of taxes upon, estates of thirty-four persons, who were inhabitants of Haverhill on May 1, 1881, and the assessors made and included therein an additional valuation of the personal estate of the testator at $390,000, and an additional assessment of taxes thereon, to him, and not to the defendants as executors of his will, of $6,552, which is sought to be recovered in this action. The only record made by the assessors, at the time of said additional valuations and assessments, was a memorandum, written partly in ink and partly in pencil, which was then delivered to and afterwards copied by the plaintiff, then acting as the secretary of the assessors, in one of the books of the tax-list for 1881, appropriated to the valuations of, and assessments on, estates of inhabitants of said city in a certain ward.   Neither the memorandum nor the " additional " valuations and assessments, nor the copy of the same in said book, were ever subscribed or sworn to by the assessors.   Subsequently to the meeting of September 12, 1881, and to the proceedings in relation to

the additional assessments, and on another day, a record was made in the book of records of the assessors.

On December 27, 1881, the assessors made and committed to the plaintiff the additional tax-list, and a warrant, signed by all of the assessors, for the collection of said additional taxes.

On September 15, 1881, the plaintiff demanded of the defendants the payment of the additional tax so assessed to their testator, and they refused to pay the same.

The only " discovery " of personal estate of the testator, owned by him on May 1, 1881, and liable to taxation in Haverhill, and which had been omitted by the assessors in their first valuation of estates and assessments of taxes, consisted in a statement made to them on September 12, 1881, by R. S. Chase, one of the assessors, after they had committed to the plaintiff their warrant and tax-list on that day.   The statement of Chase to the assessors, which was admitted against the defendants' exception, was, in substance, as follows :

" I had a private conversation with E. G. Wood, one of the executors, on September 12, 1881.   I stated to Wood that the assessors were considering the increased valuation of the Hale estate, and that as a citizen of Haverhill his interest in a proper valuation was the same as mine.   Wood replied, that he thought it would be impolitic to change the valuation.   I said that, waiving that point, in case the assessors concluded to increase the valuation, I would ask him if, from his knowledge of the estate, he should consider $500,000 too high a valuation from May 1, 1881.   Referring to that point only, he replied, that he thought $500,000 too high.   I then inquired if $400,000 was too much. He said, if there was to be any change, he did not think $400,000 was too much."

The conversation referred to took place in the afternoon of September 12, and was afterwards reported to the board of assessors at the same meeting at which the assessors committed the first warrant to the collector.   Prior to this conversation, and after the death of the testator, the matter of some additional assessment upon his estate, but of no definite or specific sum or property, had been talked of, and considered by the assessors.

Upon the information contained in the statement of Chase, and upon no other information or facts, the assessors made said

additional valuation and assessment. There was no evidence that the assessors discovered any specific stocks, bonds, or other specific property, upon which they made said additional valuation, and they did not specify any particulars of property as discovered by them, and omitted from the previous assessment.

Evidence was offered by the defendants, that Chase did not state to the assessors his conversation with Wood truly, either in form, substance, or effect; but the judge did not consider this evidence, ruling that it was immaterial.

The judge ruled that, upon the above facts, the plaintiff was entitled to recover; and found and ordered judgment accordingly. The defendants alleged exceptions.

*B. F. Brooks & H. G. Nichols*, for the defendants.

*H. Carter & H. N. Merrill, (J. O. Wardwell* with them,) for the plaintiff.

C. ALLEN, J. 1. If a person who is liable to be taxed in a town for personal property does not bring in a list of such property to the assessors, as provided by law, it is their duty to ascertain, as nearly as possible, the particulars thereof, and to "make an estimate thereof at its just value, according to their best information and belief." Gen. Sts. c. 11, § 27. Pub. Sts. c. 11, § 41. If they are unable to ascertain the particular kinds or items of such taxable personal property, an estimate of it may be made as "personal property," without any enumeration of particulars. This practice, we believe, prevails widely; and indeed it appears to be necessary, in view of the manner in which much taxable personal property is now commonly held, of the ease and frequency with which it is transferred, and of the practical impossibility of ascertaining correctly the particulars of an individual's investments and property without as well as within the State on any given day. Such appears to have been the method which was sanctioned in *Bates* v. *Boston*, 5 Cush. 93, and a similar method in respect to real estate was approved in *Tobey* v. *Wareham*, 2 Allen, 594. The requirement of the Pub. Sts. c. 11, § 43, that the assessors shall specify the amount of each of several classes of taxable personal property, namely, money at interest and other debts due, money on hand including deposits, public stocks, and securities, and stocks in corporations without the State, did not exist until 1879. It was

adopted chiefly for statistical purposes; it of course extends only to so much of the enumerated classes as the assessors may be able to ascertain; it does not include all taxable kinds of personal property; and a compliance with it is not essential to the validity of a tax. See *Sprague* v. *Bailey*, 19 Pick. 436, 441; *Lincoln* v. *Worcester*, 8 Cush. 55, 63. The existence of that requirement by no means precludes assessors from assessing a tax upon "personal property," when they are unable to ascertain the items of which such personal property is composed.

2. It was determined in *Harwood* v. *North Brookfield*, 130 Mass. 561, that an additional assessment upon personal property, laid under the authority of the St. of 1868, *c.* 320, upon a discovery by the assessors that the taxable personal estate of any person has been omitted from the last annual assessment, is not to be considered as a new and independent assessment, but simply as the correction of a mistake in the regular taxation; that the tax of a tax-payer for the year is but a single tax, and a single assessment; that it is not necessary that property of the tax-payer must in fact be found, as a condition precedent to making the addition to the tax, nor even that he should own the newly assessed property; that his position is just the same as if the whole assessment had been made at the outset, and his only remedy, if there is an overvaluation, or if property is included which he does not own or possess, is by application for an abatement, according to the ordinary rule. This decision goes far towards determining the principal point in the present case.

The deceased was liable to be taxed on personal property, and in the regular assessment it was valued at $14,250, apparently without any mention of items, he having brought in no list to the assessors; and the additional tax was merely the correction of a supposed mistake. If the assessors discovered that he was liable to taxation for a greater amount than their original estimate, they were at liberty to assess him for it in the same manner as if it had been included in the original assessment. Their authority to make an estimate of his taxable property at its just value was not exhausted by having made one such estimate, and by including it in the list sent to the collector. The whole tax, that originally assessed, and that assessed by way of

addition, was but "a single tax, and a single assessment," as declared in *Harwood* v. *North Brookfield;* and it was no more necessary to ascertain or to specify the particular items of property, in laying the additional assessment, than in laying the original one. It is urged upon us, that this construction of the statute will leave the citizen open to injustice and oppression; and that, while the amount for which assessors can in the first instance doom him is in a measure limited by statute, there is no limit to the amount at which they can value his estate, by way of an additional assessment. The answer is, that the protection of the citizen lies, first, in the fact that the assessors are public officers, acting under oath, and under the responsibility for misconduct in office which the common law imposes on all public officers; secondly, in his right to give in a list of his property, which is conclusive upon assessors; and thirdly, in his right to an abatement, if the taxes are excessive. The right to an abatement, under the limitation prescribed by § 73, extends to additional assessments laid under § 78. No doubt an extreme case might be imagined, where the discovery of a large fortune owned by a tax-payer, living in a small place, who had been supposed to be comparatively poor, might subject him to the payment of an onerous tax, and might possibly result in the collection of more money by taxation than the needs of the town would require; but this result would equally follow, if all the particular items of his property were ascertained and assessed specifically. If this danger is thought to be a practical one, it must be guarded against by legislation.

3. By the true construction of the St. of 1868, *c.* 320, (Pub. Sts. *c.* 11, § 78,) the assessors cannot be said to discover that the real or personal estate of a person has been omitted from the last annual assessment, until they become satisfied as a board that there has been such omission. The statute contemplates joint action on their part, and private information obtained by one or more individual assessors may prove unsatisfactory to the board. When reference is made in the statutes to "the assessors," the board of assessors is meant, unless there is something to signify the contrary; Pub. Sts. *c.* 11, § 5, *cl.* 10, 12; §§ 7, 9, 11, 72, and numerous other sections; *c.* 27, §§ 66, 67; and when a single assessor is meant, it is so expressed in plain terms.

Pub. Sts. *c.* 11, §§ 16, 29, 30, 93, and other sections. In the
present case, it might well be found that only one of the as-
sessors had obtained any definite ground to act upon, before
the tax-list and warrant were committed to the collector, and
that the board of assessors was not informed, and did not know,
of Mr. Hale's ownership of the property covered by the addi-
tional assessment till afterwards, and that the assessors then
proceeded to act upon it as a board.

4. It is further urged by the defendants, that the additional
tax was not entered in the collector's tax-list, but that a separate
and incomplete tax-list was made, and a new warrant issued.
It is not quite clear from the bill of exceptions whether the new
assessments were at once entered upon the tax-list which had
been committed to the collector, or whether the entry was then
made merely upon the valuation list kept by the assessors. The
defendants take the latter view, although their bill of exceptions
speaks of the entry as being made in the tax-list, and not in the
valuation-book. If the view of the defendants is adopted, still
the list of additional assessments committed to the collector on
December 27, with a warrant for the collection thereof, was then
in law to be deemed a part of the original assessment of taxes
for the year, and took effect as of the first of May. This list of
taxes, though contained in a separate book, or on a separate
paper, might well be considered to be entered on the tax-list of
the collector, which often, if not usually, in large places, is con-
tained in several books. It was then the collector's duty to
collect the same "in the manner specified in his warrant." § 78.
There is no express provision of statute that a new warrant shall
be issued in such case; and the defendants contend that an issue
of a new warrant is without authority. But, without now de-
termining whether or not such new warrant is necessary, it is
clearly within the implied powers of the assessors. According
to the usual forms in this Commonwealth, the original warrant
specifies the aggregate amount of taxes contained in the tax-
list which accompanies it; and by its terms would not cover
the additional assessments. Whenever additional assessments
are made, either on account of the discovery of additional prop-
erty, as provided in *c.* 11, § 78, or upon the application of men
or women to be assessed under the provisions of the Pub. Sts.

*c.* 6, §§ 8, 9, it is proper, if not necessary, that a new warrant should be issued containing apt references to the taxes which are thus added to and made a part of the tax-list. So also in case of re-assessments under *c.* 11, § 79 ; *c.* 12, § 61.

5. The assessment, being made as of May first, was properly laid to Mr. Hale, who was then living, and not to his executors.

6. The statement made by the assessor Chase to his associates, at a meeting of the board of assessors, was admissible for the purpose of showing that the board then became satisfied that personal estate of Mr. Hale had been omitted from the assessment ; and it was quite immaterial whether his statement of his previous conversation with Wood was wholly correct or not.

*Exceptions overruled.*