CITY OF LOWELL *vs.* COUNTY COMMISSIONERS OF
MIDDLESEX.

SAME *vs.* SAME.

MERRIMACK MANUFACTURING COMPANY *vs.* SAME.

TREMONT AND SUFFOLK MILLS *vs.* SAME.

MASSACHUSETTS COTTON MILLS *vs.* SAME.

Middlesex.     March 6, 7, 1890. — October 25, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Abatement of Tax — Water Power — County Commissioners — Assessors
— Machinery — Evidence — Bed of Canal — Certiorari.*

Under the Pub. Sts. c. 11, §§ 41, 45, 69, and the St. of 1885, c. 355, county commissioners, upon an appeal to them under the Pub. Sts. c. 11, § 71, for an abatement of taxes, are to estimate the assessed property at its fair cash value, irrespective of the value placed by the assessors upon similar property in the same city.

Movable copper rolls, mills, and dies used in a calico-printing factory for printing cotton cloth are not necessarily parts of the machinery in the factory for purposes of taxation, within the meaning of the Pub. Sts. c. 11, § 20, cl. 2, and c. 13, § 39.

The valuations of property in previous years for the purpose of assessing taxes are not evidence of its value in subsequent years, but an assessment will not be quashed because such valuations are considered by assessors or by county commissioners.

Water power appurtenant to mill property is to be taxed with the land thereby increased in value; the Pub. Sts. c. 11, § 53, providing for the entry in the valuation-books of the true value, among other buildings, of mills, "such value to be exclusive of land and water power and of the machinery used in said buildings," only mean that the value of such water power and machinery is not to be included in valuing the buildings.

Under the Pub. Sts. c. 11, §§ 69, 71, a tax-payer, who has brought in a list containing all the requisite particulars of his taxable property, is not entitled to an abatement because the assessors value the items in gross, instead of separately as directed by the statute.

Land owned in fee by a manufacturing company under a canal passing through its premises is taxable to it, although its right to use the water is subject to that of others to have the water flow through the canal for use beyond its premises.

A manufacturing company which did not draw water from a canal flowing through its premises acquired, by indenture with the proprietors of the canal, the right for ninety years to "erect, keep up, support, and maintain buildings above high-water mark over said canal," and over a strip of land adjoining it, and the

proprietors reserved "all of said canal below high-water mark," and all rights therein, including the right at any time to widen, deepen, and enlarge the canal, and for that purpose to take down and remove any of the buildings erected by the company. *Held,* that the bed of the canal was not taxable to the company.

FIVE PETITIONS for writs of certiorari to quash the proceedings of the county commissioners of Middlesex with reference to taxes assessed upon certain corporations by the city of Lowell. *Holmes,* J. reserved the cases for the consideration of the full court. The material facts appear in the opinion.

*W. S. Knox,* (*L. T. Trull* with him,) for the petitioner in each of the first two cases, and for the respondents in the last three cases.

*T. L. Livermore & C. S. Lilley,* for the respondents in the first two cases, and for the petitioner in each of the last three cases.

FIELD, C. J. The first case relates to the valuation and assessment of the property of the Merrimack Manufacturing Company on May 1, 1887. It appears that the respondents, the county commissioners of the county of Middlesex, abated a part of the tax assessed on the real estate and machinery of this company; and the petition avers that the respondents in their proceedings erred in law in the following respects, to wit:

1. In ruling that the question of disproportionate taxation was open in this proceeding, and in admitting evidence tending to show disproportionate taxation.

2. In ruling that there was any competent evidence before them to prove disproportionate taxation, and in finding that the said Merrimack Manufacturing Company was disproportionately taxed by the assessment aforesaid.

3. In ruling that certain copper rolls were not parts of the machinery of said Merrimack Manufacturing Company, and taxable as such, and in abating the tax to the amount of their value.

4. In ruling that certain mills and dies were not parts of the machinery of said Merrimack Manufacturing Company, and taxable as such, and in abating the tax to the amount of their value.

The assessors of the city of Lowell, acting under the Pub. Sts. c. 11, § 13, and § 20, cl. 2, for the purpose of taxation, valued the real property and machinery of the Merrimack Manufactur-

ing Company, on May 1, 1887, at $3,430,403, and assessed a tax upon this valuation. The tax commissioner of the Commonwealth, acting under the Pub. Sts. c. 13, §§ 39, 40, valued the same real estate and machinery on that date at $2,675,000. The manufacturing company thereupon, in pursuance of the Pub. Sts. c. 13, § 41, made an application to the assessors of the city of Lowell for an abatement, and the assessors refused to grant an abatement, whereupon an appeal was taken to the respondents in accordance with the Pub. Sts. c. 11, § 71. That section is as follows : " If the assessors refuse to make an abatement to a person, he may, within one month thereafter, make complaint thereof to the county commissioners by filing the same with their clerk; and if, upon a hearing, it appears that the complainant is overrated, the commissioners shall make such an abatement as they deem reasonable." The duty of the assessors when an application is made to them for an abatement is defined in the Pub. Sts. c. 11, §§ 69, 72, 73, 74. Section 69 of that chapter is as follows : " A person aggrieved by the taxes assessed upon him may apply to the assessors for an abatement thereof; and, if he makes it appear that he is taxed at more than his just proportion, or upon an assessment of any of his property above its fair cash value, they shall make a reasonable abatement." A person may be taxed at more than his just proportion, either because he is taxed at a disproportionate rate, or for property which he does not own, or because his property is disproportionately valued. By the Pub. Sts. c. 11, § 45, the assessors are required to " make a fair cash valuation of all the estate, real and personal, subject to taxation," in the city or town. See Pub. Sts. c. 11, §§ 41, 69; St. 1885, c. 355, § 3.

It appears from the return of their proceedings by the respondents, that the Merrimack Manufacturing Company contended before them " that by the said assessment of taxes upon it by said assessors it was taxed at more than its just proportion ; and, in support of this contention, offered to show the valuation placed by said assessors for said year upon certain pieces of property in said Lowell owned by other corporations and individuals, as compared with their valuation of certain like pieces of property of the complainant"; and evidence to show this was admitted. It is obvious from the statutes now in force

which have been referred to, that it was the duty of the county commissioners to value the real property and machinery of the company at its fair cash value, and that they would have no right to value it at less, even if the other similar real property and machinery in the city of Lowell had been valued by the assessors at less than their fair cash value. For the purpose of determining the " true value " of the corporate franchise of the Merrimack Manufacturing Company as the basis of the tax to be levied under the Pub. Sts. c. 13, it is immaterial on what basis the property and machinery of other corporations in the city of Lowell had been assessed by the assessors; and, apart from this, it is a violation of the statutes knowingly to make a valuation of property for the purpose of taxation at less or more than its full and fair cash value. See St. 1885, c. 355, §§ 1, 3. The just proportion intended by the existing statutes is attained by assessing the property of different persons at a uniform rate, upon its fair cash valuation. Whatever may be the remedy, if there be any, when it is shown that the assessors have intentionally assessed the property of a part or all of the inhabitants at less than its fair cash value, we are of opinion that, in a petition for the abatement of taxes on the ground of the overvaluation of the property of the petitioner, and the disproportionate taxation arising from such overvaluation, the question is, whether the property has been valued at more than its fair cash value, and not whether it has been valued relatively more or less than similar property of other persons. If, then, the respondents admitted the evidence objected to for the purpose of determining the proportionate value as distinguished from the actual cash value of the property of the Merrimack Manufacturing Company, we think that they erred in the rule of law which they adopted as the standard or test to be applied in determining whether the company had been overrated. If, however, the valuation of the assessors of similar pieces of property of other corporations and persons was admitted only as evidence of the actual cash value of the property of the Merrimack Manufacturing Company, then the admission of this evidence would not necessarily require that the proceedings should be quashed. If we assume that such evidence would be held incompetent in proceedings in court, still proceedings before county commis-

sioners, acting as a board of appeal from the decisions of the assessors, are not, in all respects, subject to the same rules as trials of causes in court, and a writ of certiorari to quash their proceedings is not usually issued for mere mistakes in the admission of evidence, when substantial justice appears to have been done.

Upon an examination of the return of the respondents, we think that it appears that the question was distinctly raised whether overrating within the meaning of the statute did not include a valuation relatively greater than that put upon the property of other persons, as well as a valuation in excess of the fair cash value of the property, and that the commissioners ruled that it included both kinds of overvaluation, and therefore admitted the evidence objected to, and found that the property of the Merrimack Manufacturing Company had been overvalued for the purpose of taxation. This was the adoption of a double standard of value, and was erroneous, and we cannot say that substantial justice has been done, because it may be that the county commissioners found that the valuation of the assessors . was not in excess of the fair cash value of the property, but only that the property had been valued by the assessors at more than similar property of other corporations. The result is, that the abatement made by the county commissioners must be annulled, and they must proceed anew upon the complaint of the Merrimack Manufacturing Company to determine the fair cash value of its real estate and machinery according to law. See *Lowell* v. *County Commissioners*, 6 Allen, 131; Pub. Sts. c. 186, § 9.

It was a mixed question of law and fact whether the copper rolls and the mills and dies were a part of the machinery of the Merrimack Manufacturing Company. These rolls are cylindrical, and hollow at the core, and have engraved or stamped upon their surface the designs to be printed in colors upon the cloth. After being used in printing one design, the roll is turned in a lathe and the old design removed, and a new design is engraved or stamped upon the new surface thus obtained. This process is repeated until about ninety-nine per cent of the roll is consumed, and the remainder is then exchanged for new rolls at so much a pound. A roll in use in a printing machine revolves

upon a movable mandrel corresponding to the width of the machine. The cloth to be printed is placed between the roll and a lapping, so called, and thus receives the design. The rolls were essential to the printing of calico by the method used by this company. When not in use, the rolls, removed from the mandrels, were stored in a storehouse with other materials used in calico printing. The mills and dies are used for transferring designs upon the copper rolls. The design is engraved in whole or in part upon a piece of steel, which when hardened is called a die. When brought in contact with a piece of soft steel under pressure, the die reproduces the design upon it in relief. The softer piece is then tempered, and is called a mill, which, when brought in contact under pressure with a copper roll in an engraving machine, leaves its impression on the roll. The result obtained from the use of the mills and dies is nearly the same as that from engraving a design by hand on the roll. After being used once, these mills and dies are thrown aside, and, if not called into like use again, are by reason of their hardness practically valueless. The commissioners inspected these rolls, mills, and dies, and heard the evidence of experts upon the question as to whether they were parts of the machines in which they were used, and ruled that they were not. There are intimations in our reports that by machinery, in the provisions of the statute we are considering, is meant machinery in some manner affixed to real property. See *Boston & Sandwich Glass Co.* v. *Boston*, 4 Met. 181 ; *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, 309. However this may be, we see no error of law in the findings of the commissioners that the rolls, mills, and dies were not a part of the company's machinery, within the meaning of the Pub. Sts. c. 11, § 20, cl. 2, and c. 13, § 39, and we are inclined to think that, on the above facts, we should have found the same way.

*Writ of certiorari to issue.*

The second case relates to the valuation of the real estate and machinery of the Boott Cotton Mills on May 1, 1887. The tax commissioner put a less valuation upon them than that of the assessors of the city of Lowell. The corporation applied by complaint to the assessors for an abatement, which was refused,

and thereupon it made complaint to the county commissioners, pursuant to the Pub. Sts. c. 11, § 71. At the hearing before the commissioners, the corporation called one Cumnock, its agent and manager, and, against the objection of the city of Lowell, was allowed to prove by him, as the return states, " that the property in question, and the condition thereof, was the same on the first day of May, 1887, as on the first day of May, 1886 ; that if any change had taken place, it was on the side of depreciation by reason of wear and use ; that there was no different property in the mill yard of the complainant on the first day of May, 1887, than on the first day of May, 1886, except that 4,284 spindles, four Platt mules, eight fly frames, and one loom had been added to the machinery of the complainant, and the witness gave the cost of this additional machinery. There was no cross-examination of the witness " by the city. After this, the Boott Cotton Mills offered in evidence a duly attested copy of the record and return of said county commissioners, which was admitted in evidence against the objection of the city, of their proceedings upon a former complaint to them by the complainant, similar to the complaint then before the commissioners, wherein they determined the value of the real estate and machinery of the Boott Cotton Mills for the purpose of taxation on May 1, 1886, to be $1,290,920. This was a less sum than the valuation of the assessors for 1887, or than the valuation of the tax commissioner for 1887. The return of the county commissioners in this case recites that " there was no other evidence as to the value of said real and personal estate offered by complainant than as hereinbefore set forth," viz. such copy and Cumnock's testimony ; and that " the respondent [city] introduced no evidence whatever." The commissioners, " having examined the property of the complainant, at the conclusion of the said hearing " reduced the valuation below that made by the assessors, and abated a part of the tax assessed by them.

It was not the intent of the statutes that such an administrative board as assessors or county commissioners should, when they grant a hearing, be required to proceed exactly in accordance with the rules which have been established in judicial courts for the trial of causes. Some of those rules have been established for the sake of convenience in jury trials, in order

that the jury may not be distracted by collateral issues, or the trial be so far prolonged that the jury cannot remember the testimony. The final judgment of the county commissioners is conclusive upon all the world as to the valuation to be put upon property, for the purpose of the assessment for which the value is determined, and it resembles a judgment *in rem* rather than a personal judgment; but it was never intended that such a judgment should be conclusive as to value in reference to future assessments, even if the assessors or county commissioners should be of opinion that the values were the same at the different times when the assessments were made. If assessors or county commissioners who have estimated the value of property for the purpose of assessment in one year are the next year of opinion that, although the value has not changed, the valuation of the preceding year was too low or too high, they are bound by the statutes to estimate the value for such next year according to their " best skill and judgment" at the time they make the valuation.

Judgments *in rem* are not conclusive upon all incidental issues which are involved in the judgment, although this has been sometimes put upon the ground that one or all of the parties to the subsequent proceedings were not actually parties to the proceedings *in rem*. See *Barney* v. *Tourtellotte*, 138 Mass. 106; *Brigham* v. *Fayerweather*, 140 Mass. 411. Evidence of the assessed value of property has always been excluded in this Commonwealth in suits or proceedings before courts to determine the value of land, but no case exactly like the present has arisen. See *White* v. *Boston & Providence Railroad*, 6 Cush. 420; *Brown* v. *Providence, Warren, & Bristol Railroad*, 5 Gray, 35; *Flint* v. *Flint*, 6 Allen, 34; *Kenerson* v. *Henry*, 101 Mass. 152; *Raynes* v. *Bennett*, 114 Mass. 424. Evidence of this kind has been usually excluded because the assessment was *res inter alios;* and it is argued in the present case that the parties are the same as they were in the proceedings of the previous year, and that the valuations were for the same purpose. The real parties in interest are the Commonwealth, the county of Middlesex, the city of Lowell, and the Boott Cotton Mills. The proceedings, however, are *sui generis*, and are not in the nature of a suit between persons; and we think that the statutes plainly contem-

plate that an independent valuation of property should be made each year, according to the judgment of the assessing boards for that year. In this view, the assessments for previous years are only conclusive with respect to the taxes assessed for those years, and with reference to assessments for subsequent years they can only be considered as the opinion of the assessing boards concerning the value of the property in the years when they were made. In the view of a court, they are not, strictly speaking, admissible as evidence of value in making future assessments. But in considering the duty of such a board, as that of the assessors or of the county commissioners, we see no impropriety in its consulting its own records to ascertain what values have been previously put upon property, with the view of forming the best judgment it can upon its present value. Such a board has a right to inform itself, in any reasonable manner, of many circumstances which may affect the judgment of its members; and when it does not adopt wrong standards of value, its proceedings ought not to be set aside merely because it has considered evidence which a court would not admit. This is only another way of saying that a writ of certiorari, when used to review proceedings like those in this case, is not a writ of right, but of discretion, and that it will not be issued to quash the proceedings when substantial justice has been done, although some evidence has been rejected or admitted which a court of law would have admitted or rejected. The evidence admitted here was only evidence of the opinion of the same persons upon the value of the same property the year before, and was not of a nature likely to do substantial injury to any party to the proceedings. See *Lowell* v. *County Commissioners*, 146 Mass. 403, 412. In this case the                    *Petition must be dismissed.*

The third case relates to the same property and the same valuation as the first case, but the petition is brought by the Merrimack Manufacturing Company, and not by the city of Lowell. The company complain that, notwithstanding the abatement made by the county commissioners, it is still overrated, and that errors in law to the prejudice of the company appear in the proceedings of the commissioners. The first error alleged is, that the commissioners refused to admit as evidence

a duly attested copy of the record of their proceedings upon a complaint made to them by the petitioner upon an appeal from the decision of the assessors upon the value of its property for the purpose of taxation on May 1, 1886, which was the year before the assessment made in the present case. In that record appeared the value put by the commissioners upon the real estate and machinery of the petitioner for the purpose of taxation for the year 1886. Apparently the reason why the record was rejected as evidence in this case, while in the second case we have considered a similar record was admitted, is, that in the present case, when it came on to be heard, Samuel O. Upham had been elected commissioner in place of A. M. Lunt, so that the hearings for each of the two years were not had before the same persons as commissioners, while in the second case it appears that the two hearings were had before the same persons. We are of opinion, however, as we have said in the second case, that the valuation of the previous year, even if made by a board composed of the same persons as that of the next year, is not evidence which the board the next year was compelled to receive, and therefore, that, even if the distinction taken by the commissioners between the two cases cannot be considered as sound, no error of law is shown in the present case.

The petitioner asked the commissioners to rule, " that the water power belonging to the complainant is not subject to assessment and taxation as water power by the city of Lowell, and the assessment thereof was illegal and void." The commissioners refused so to rule, and ruled " that if the value of the complainant's land in the mill yards was enhanced by the ownership and use of the water power appurtenant to the land and the mill buildings standing thereon, the same might be taken by the assessors at such enhanced value for the purpose of taxation." The counsel for the company contend, in their argument, that the return of the commissioners shows that they assessed the water power as such, and not as a part of the land. The assessors entered on their books their valuation of the land and water power in the following manner, to wit: " Land in cotton yard, with water power, $319,036 ; land in print works yard, with water power, $211,857." The commissioners reduced this valuation, and entered this reduction on their records in the

following manner, to wit: " On land and water power in cotton yard, assessors' valuation, $319,036 ; reduced to $230,414 ; on land and water power in print works yard, assessors' valuation, $211,857 ; reduced to $139,425."

The Pub. Sts. c. 11, § 53, provide that " the assessors shall enter, in the books furnished in accordance with the provisions of the preceding section, the valuation and assessment of the polls and estates of the inhabitants assessed, in the following order. . . . In Column Number Fifteen.  The true value of buildings enumerated in the preceding column, placed opposite the description of the same, including water-wheels; such value to be exclusive of land and water power and of the machinery used in said buildings."  In column numbered 7 they are required to enter " The true value of machinery used in all kinds of manu- facturing establishments"; and in columns numbered 16, 17, and 18, they are required to enter a description by name or otherwise of each and every lot of land assessed, "the same placed opposite the name of the person or party to whom it is taxable, with the number of acres or feet in each lot, the number of quartz-sand beds, of stone quarries and ore beds, and the true value thereof."  In column numbered 14 they are required to enter buildings of all kinds, to be described in the order therein named, which includes " cotton factories, with the number of spindles and looms used in the same," and "print-works."  These provisions were first enacted by the St. of 1861, c. 167, and from that statute have been incorporated into the Public Statutes. The argument is, that, before the passage of this statute, water power useful for mill purposes could not be taxed as a distinct subject of taxation, and that when it was used in connection with mills it could only be taxed as parcel of the mills or ap- purtenant to them ; and that since the passage of this statute water power, even if appurtenant to mills, cannot be taxed at all, because by the statute it has been excluded as a subject of taxation.  But the statute means, that, in valuing the buildings, the value of the " water power and of the machinery used in said buildings " shall not be included; not that the machinery shall not be valued and taxed, or that the water power which is parcel of or is appurtenant to land, and is used in connection therewith, shall not be valued and taxed with the land.  The

decisions before this statute were that water power was "a capacity of land for a certain mode of improvement, which cannot be taxed independently of the land." *Boston Manuf. Co.* v. *Newton,* 22 Pick. 22. *Lowell* v. *County Commissioners,* 6 Allen, 131.

There is nothing in the statute of 1861, or in the Public Statutes, indicating that water power used in connection with land should not be taxed with the lot of land of which it is parcel, or to which it is appurtenant, and we think that the county commissioners rightly construed the statutes. See *Pingree* v. *County Commissioners,* 102 Mass. 76 ; *Fall River* v. *County Commissioners,* 125 Mass. 567 , *Flax Pond Water Co.* v. *Lynn,* 147 Mass. 31. The form of the assessment does not show that the water power was taxed independently of the land.

It appears by the return of the county commissioners that the Merrimack Manufacturing Company owned certain buildings and structures " in which the manufacture of cotton cloth is carried on through all of its processes, from the primary treatment and preparation of the raw cotton to the finished fabric," and that these buildings and structures were situated in what was called the cotton yard. It also owned certain other buildings and structures " in which the business of printing cotton cloth is carried on through all of its processes," which were situated in what was called the print-works yard. The company does not print all the cotton cloth which it manufactures, but sells some of it unprinted. These two yards " are not separated by any continuous fence, wall, or other divisional structure, but the boundaries of each yard are marked by the sides and ends of buildings and structures standing in the one or the other yard, and in part by fences, and are well known and established." In the list of its property which the company furnished, each building and structure was separately described, and the machinery in each. The assessors in their valuation-book described the land with the water power in these two yards in the manner which has been hereinbefore recited, and the machinery as follows, to wit, " 156,480 spindles and printing machinery, 4,607 looms"; and they valued the machinery used in these yards in a lump, at $1,353,000, without separately designating the machinery used in each building, or separately valuing it.

The buildings in the two yards they did not separately describe and value, but under a general description they valued them at $900,000. The petitioner requested the commissioners to rule as follows: " That the method of valuation of the buildings and machinery of the complainant in the cotton yard and print-works yard adopted by the assessors for the year 1887, and the method of entering said buildings and machinery and the valuation thereof in the valuation-books of the assessors for the year 1887, adopted by them, were irregular, illegal, and contrary to law ; and that the assessors' assessment for said year of said buildings and machinery was illegal and void, and that such part of the total taxes paid by the complainant for the year 1887 as was assessed upon said buildings and machinery should be abated." This ruling the commissioners refused to make, but they reduced the valuation of the said buildings and machinery, and abated a part of the tax assessed thereon.

The Pub. Sts. c. 13, §§ 39, 41, do not require any separate valuation of the different lots of real estate and machinery, and it is argued that in proceedings under this chapter it is immaterial whether the different lots are separately valued or not. It has been held that in an appeal to county commissioners under the Pub. Sts. c. 13, § 41, the provisions of the Pub. Sts. c. 11, § 72, are inapplicable; *Lowell* v. *County Commissioners*, 146 Mass. 403; but it is also held in the same case, that when the assessors have made separate valuation of different lots or parcels, and the corporation complains of overvaluation of some but not of all of the parcels, the commissioners are confined to the question of the overvaluation of the parcels specified, and must reduce the valuation if they find them overvalued, although other parcels in their opinion have been undervalued by the assessors. It is still the law, that if any part of a tax assessed to·a person upon his real estate is valid, although other real estate has been assessed to him for which he is not taxable, the remedy is by abatement, and not by action. *Schwarz* v. *Boston*, 151 Mass. 226. But the remedy by abatement is, by the Pub.· Sts. c. 11, § 69, confined to cases where it is made to appear that the person is "taxed at more than his just proportion, or upon an assessment of any of his property above its fair cash value," or by § 71 of the same chapter, when it "appears that

the complainant is overrated." A person is overrated when he is taxed for property for which he is not taxable, or when the property for which he is taxable is overvalued; but he is not, strictly speaking, overrated when he is taxed at a fair valuation on only the property for which he is taxable, although the property for which he is taxed is described generally, but not specifically as the statute requires. It has been often held that, if no list of the property is brought in, a tax is not invalid, because the property on account of which it is assessed is not particularly described. See Pub. Sts. c. 11, § 41; *Lincoln* v. *Worcester*, 8 Cush. 55; *Tobey* v. *Wareham*, 2 Allen, 594; *Noyes* v. *Hale*, 137 Mass. 266.

The argument is, that when a list is brought in and all necessary inquiries are answered under oath, and when this list contains the particulars required by statute, the assessors must receive it as true except as to valuation, and must value separately the different items of property contained in it, according to the directions of the Pub. Sts. c. 11, § 53. It is plain that the Pub. Sts. c. 13, § 41, were enacted for the purpose of preventing what in effect would be something like double taxation. If the assessors put one valuation upon the real estate and machinery of the corporation, and the tax commissioner puts a less valuation, and the corporation does not apply to the assessors for an abatement, both valuations probably would remain valid for the purposes respectively for which they were made. If the corporation proceeds for an abatement pursuant to the Pub. Sts. c. 13, § 41, the decision of the county commissioners would be conclusive as to value, for the purpose of both local taxation and the taxation of the corporate franchise. If the corporation does not proceed for an abatement within one month from the date of the notice by the tax commissioner of his determination of the value of the real estate and machinery, it may apply to the assessors for an abatement if it files a list and makes application within six months from the date of its tax bill, pursuant to the Pub. Sts. c. 11, §§ 69, 72, 74; but in this case the decision of the county commissioners, if an appeal is taken to them, probably would affect only the valuation for the purpose of local taxation. In the case we are considering the proceedings were under the Pub. Sts. c. 13, § 41. The suggestion is, that as the

complainant can select in its complaint for an abatement the particular items which it thinks have been overvalued, omitting those which have been undervalued, and as the county commissioners cannot revalue the whole property, but are confined to the particular items, the complainant has been deprived by the action of the assessors in this case of certain advantages which it would have had if the assessors had specifically described and valued the different parcels of its real estate and machinery. These advantages, however, are, we think, merely incidental, and the St. of 1861, c. 167, could not have been enacted for the purpose of enabling tax-payers to have their whole property ultimately valued at less than its fair cash value for the purpose of taxation.  See *Lowell* v. *County Commissioners*, 3 Allen, 546. It was suggested in *Lincoln* v. *Worcester*, 8 Cush. 55, that the remedy for the correction of irregularities similar to those here complained of was by an application for abatement; but it was also said, that the objections were to matters of detail, " which do not go to show that either the tax on the real estate, or the tax on the personal estate, is void," and the decision was that assumpsit would not lie to recover the amount of the tax which had been paid.

In all the cases to which our attention has been called, the want of a more specific description of land and buildings has never been such as to render the tax void.   Many of the provisions of the Pub. Sts. c. 11, § 53, if not all, are regarded as directory.  *Sprague* v. *Bailey*, 19 Pick. 436.   *Torrey* v. *Millbury*, 21 Pick. 64.   *Tobey* v. *Wareham*, 2 Allen, 594.   *Westhampton* v. *Searle*, 127 Mass. 502.   *Noyes* v. *Hale*, 137 Mass. 266.   *Bemis* v. *Caldwell*, 143 Mass. 299.

In *Boston Water Power Co.* v. *Boston*, 9 Met. 199, 204, it is said that " there is no provision of law, that a tax shall be void, when two or more parcels of real estate, belonging to the same owner, and in his own occupation, are assessed together when they might have been severed, or are assessed separately when they might have been united."   In *Jennings* v. *Collins*, 99 Mass. 29, 31, it is said that " where lands are separated, either by the use or purpose to which they are devoted, or by the mode of their occupation, or are disconnected in location, a tax laid generally, upon an entire valuation, cannot be made a lien upon each

separate parcel, even when they are all owned or occupied by the same person," citing *Hayden* v. *Foster*, 13 Pick. 492. But the distinction between a void tax and a tax which does not create a lien on specific real estate has been noticed in *Howe* v. *Boston*, 7 Cush. 273, and in other cases.

We are aware of no case in which a tax assessed to the owner upon a valuation in the gross of separate lots of land, and of separate buildings upon them, and of machinery in them, has been held to be void when all the lots, buildings, and machinery were owned by the same person. The irregularities in the assessment here complained of are in the proceedings of the assessors in making the original assessment. No authority appears to be given to the county commissioners to correct any failure of the assessors to comply with the provisions of the Pub. Sts. § 11, § 53. The duty of the county commissioners, under the Pub. Sts. c. 13, § 41, is to determine the value of the real estate and machinery of the corporation, and under the Pub. Sts. c. 11, § 71, to determine whether the corporation has been overrated, and to make such abatement as they may deem reasonable. Undoubtedly, if the corporation has been assessed for real estate or machinery for which it is not taxable, the county commissioners must exclude it; but if it has been taxed only upon property for which it is taxable, and the tax is lawful and proportional, the question for the county commissioners is whether this property has been overvalued so far as complaint is made of the valuation. It is not necessary in this case, we think, to decide what the remedy is, or whether there is any remedy, if assessors neglect to follow the provisions of the Pub. Sts. c. 11, § 53, with reference to the separate description and valuation of the kinds of property mentioned in that section. We do not intimate that we think the irregularities complained of in this case make the assessment void or voidable, but we are of opinion that this question was not one for the county commissioners to consider and decide, and that they rightly refused to rule as above requested.

It is conceded that what appears in the papers as the third ruling requested was in fact given; and that by some mistake it appears by the return, as the papers have been printed, to have been refused. In this case also the

*Petition must be dismissed.*

The fourth case relates to the assessment of the real estate and machinery of the Tremont and Suffolk Mills. It appears by the return of the county commissioners, that the petitioner made five requests for rulings which were refused. The first relates to the assessment of water power in connection with the land, and the second to the want of a separate and specific description and valuation in the valuation-books of the assessors of the two lots of land called the Suffolk yard and the Tremont yard, and of the buildings and structures situated in each of these yards, and of the machinery contained in the buildings. The questions of law involved in these requests have been considered in the preceding cases, and, for the reasons hereinbefore given, we think that the rulings of the commissioners are correct.

The fourth ruling requested is to the effect that the buildings belonging to the petitioner which stand over the Western Canal " are not legally assessable " to the petitioner. At the argument in this court, the objection to the refusal of the commissioners to make this ruling was waived. There remain, therefore, only the third and fifth requests for rulings which were refused. The fifth request is for a ruling that the land under and in the canals passing through the Suffolk yard and the Tremont yard is not legally assessable to the complainant. These canals supply the water for the water-wheels of the petitioner in the Suffolk yard and in the Tremont yard. These water-wheels are placed near the head of the canals, and the canals also serve as tail-raceways for the petitioner's mills, and are then used to convey water to the premises of the Lawrence Manufacturing Company, which are situated northerly of the yards of the petitioner. The petitioner cannot under its title deeds fill up or obstruct these canals, and is required to permit the water to flow through the same, " whether its said wheels are in use or not." Over certain portions of the canals in the Suffolk yard, as recited in the return, the petitioner has erected and maintains certain of its buildings aforementioned, and over the whole of the canals in the Tremont yard it has erected and maintains certain of its buildings aforementioned in that yard. It appears, therefore, that the petitioner owns the fee of the land under and in the canals, and has a right to use the water

subject to the right of other persons to have the water flow through the canals for use beyond the premises of the petitioner. Clearly, the petitioner is taxable for this land. No question arises in the case as to the proper method of determining its value.

The third request is for a ruling that the land under and in the Western Canal, over which certain buildings of the petitioner have been erected, " is not legally assessable " to the petitioner. We understand that the fee of this land is not in the petitioner, but that it remains with the Proprietors of the Locks and Canals on Merrimack River. The petitioner does not draw water from this canal, but the canal is used for conveying water to the premises of the Lawrence Manufacturing Company. The petitioner, by an indenture with the Proprietors of the Locks and Canals, has acquired the right for ninety-nine years from the year 1887 to " erect, keep up, support, and maintain buildings above high-water mark over said canal," and over a strip of land ten feet wide which adjoins it and lies between the canal and the street on its farther side called Suffolk Street, the Proprietors of the Locks and Canals reserving to itself and excepting from the grant " all of said canal below high-water mark," and all rights therein, and the right at any time to widen, deepen, and enlarge the canal, and for that purpose to take down and remove any of the buildings erected by the petitioner. The words " real estate and machinery owned by each corporation, and subject to local taxation," in the Pub. Sts. c. 13, § 39, must mean the same thing as the real estate and machinery which by chapter 11, § 20, are to be taxed to the corporation. It has been decided that buildings affixed to land cannot be taxed as real estate, apart from the land to which they are affixed. McGee v. Salem, 149 Mass. 238. If by the indenture the petitioner had an estate in possession in the land under and in the Western Canal, this land might be taxed to the petitioner. See Pub. Sts. c. 11, § 13. But if the petitioner was not the owner, and was not in possession of this land, it could not be taxed to the petitioner. See Flax Pond Water Co. v. Lynn, 147 Mass. 31.

A majority of the court are of opinion, that it appears from the return of the commissioners that the petitioner was not in

possession of this land within the meaning of the Pub. Sts. c. 11, § 13; that although its buildings extended over it, resting upon other land, the right to maintain them so long as the right existed was in the nature of an easement, and resembled the right to have buildings project over the land of another; and that by the indenture there was not granted to the petitioner any estate in or right of possession of the land in and under the Western Canal. As the petitioner was not in possession of the land in the canal, and had no right to use the waters, this third request of the petitioner should have been granted by the commissioners. For this reason, a writ of certiorari should issue to quash the proceedings of the commissioners, so far as they concern the valuation of the land in the mill yards, in order that it may be revalued, excluding the land in and under the Western Canal.     *Writ of certiorari to issue.*

The fifth case relates to the valuation of the real estate and machinery of the Massachusetts Cotton Mills, and the application for abatement is made wholly under the Pub. Sts. c. 11, § 69, without reference to any proceedings by the tax commissioner. The questions in this case relate to the taxation of the water power in connection with the land of the corporation, and the want of a specific description and valuation of the lots of land, buildings, and machinery of the corporation, as required by the Pub. Sts. c. 11, § 53. The two yards of the petitioner were separated from each other by a public street, or by land of the petitioner, on which tenement blocks had been erected, but in other respects the case does not differ from that of the Merrimack Manufacturing Company. These questions have been already considered, and we see no error of law in the proceedings of the commissioners.

In this case the entry must be,     *Petition dismissed.*