CASE 91—ACTION FOR TAXES.—FEB. 17.

# Louisville Railway Company v. Commonwealth.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. ASSESSMENT OF FRANCHISES—INEQUALITY PRODUCED BY UNAUTHOR-
   IZED METHODS OF ASSESSING OFFICERS —It is not a valid objection
   to an assessment of the franchises of a corporation for tax-
   ation that the county assessors, the railroad commissioners, and
   the State Board of Equalization uniformly assessed other prop-
   erty at less than its fair cash value. The fact that other as-
   sessing officers have disregarded the plain letter of the law
   constitutes no valid objection to an assessment of corporate
   franchises at their fair cash value.
2. SAME—OVER-VALUATION.—The law providing a method by which
   a corporation may be heard in fixing the value of its corporate
   franchises, the finding of the board upon the value of such
   franchises is conclusive.

Louisville Railway Co. v. Commonwealth.

3. SAME—METHOD OF VALUATION.—It is a correct method of ascertaining the value of corporate franchises to ascertain, first, the total value of the corporation's capital stock, and from that to deduct the value of its tangible property and in ascertaining the value of its capital stock, the board has the right to take into consideration the gross and net earnings of the corporation.

4. ASSESSMENT OF FRANCHISES—CONSTITUTIONAL LAW.—It is well settled that the act creating the Board of Valuation and Assessment is not liable to constitutional objection.

ST. JOHN BOYLE FOR THE APPELLANT.   (HUMPHREY & DAVIE OF COUNSEL.)

The act creating the Board of Valuation and Assessment for the assessment of specific corporations is unconstitutional.   It is not a general law; it violates uniformity; it imposes penalties not imposed upon others; it requires payment one year before others are required to pay similar taxes.

Citations: Turner v. The Town of Pewee Valley, 18 Ky. Law Rep., 756; Slaughter v. The City of Louisville, 89 Ky., 112; People v. Weaver, 100 U. S., 539; San Mateo County v. Railroad, 13 Fed. Rep., 722; Ky. Con., sec. 182; Ky. Stats., secs. 4091, 4143; Atlanta R. R. v. Wright, 13 S. E., 578.

W.  S.  TAYLOR, Attorney-General, FOR THE APPELLEE (M.  H. THATCHER OF COUNSEL), IN A BRIEF AND SUPPLEMENTAL BRIEF FOR APPELLEE.

1. The Board of Valuation is a *quasi* judicial body and its acts partake of the judicial character and can not be attacked collaterally.   Stanley v. Albany County, 121 U. S., 535; First Natl. Bank v. St. Joseph Township, 46 Mich., 530; 25 Am. & Eng. Ency. of Law, 242; Ky. Stats., sec. 4083; 82 N. Y., 610.

2. It was proper for the board in ascertaining the value of appellant's franchise to consider its net earnings.

3. If the claim for taxes and the claim for penalties constituted a misjoinder, the misjoinder was waived.   But there was no misjoinder.   Western Union Telegraph Co. v. Indiana, 44 N. E., 793; 165 U. S., 304; 45 N. E., 473.

4. The law did not require other assessing officers to assess property for taxation at less than its fair cash value.   If it did so,

it was unauthorized by law, and would not constitute ground for relief to the appellant.

Citations: City of Lowell v. Commissioners, 152 Mass., 372; State v. Assessors, 48 N. J. L., 1; Williams v. Bettle, 51 N. J. L., 512; Railroad Company v. Stookey, 122 Ill., 358.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

This action was brought by the Commonwealth of Kentucky to recover taxes due upon the assessment of the appellant's franchises by the board of valuation and assessment for the year 1896. The appellant seeks to prevent a recovery in the action upon the ground of overvaluation of its franchises: (a) That part of its franchises are perpetual, and part continue for years, and the board, in fixing the value, proceeded upon the theory that all of its franchises were to exist without limitation as to their duration; (b) that as the county assessors, the railroad commissioners, and the Board of Equalization and Assessment, assessed the other property of the State at less than its fair cash value, therefore the action of the Board of Equalization and Assessment in fixing the value of its property was prejudicial, because, in making the assessment, it did so at what it considered the fair cash value of its franchises.

Section 172 of the Constitution is as follows: "All property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to assess values for taxation, who shall commit any willful error in the performance of his duty, shall be deemed guilty of misfeasance, and, upon conviction thereof, shall forfeit his office, and be otherwise punished as may be provided by law."

Louisville Railway Co. v. Commonwealth.

·Pursuant to that provision of . the . Constitution the General Assembly passed a general revenue act, which became a law November 11, 1892, and part of which is section 4020, Kentucky Statutes, which reads as follows: "All real and personal estate within this State, and all personal estate of persons residing in this State, and of all corporations organized under the laws of this State, whether the property be in or out of this State, including intangible property, which shall be considered and estimated in fixing the value of corporate franchises as hereinafter provided, shall be subject to taxation unless the same be exempt from taxation by the Constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale." The law makes it the duty of the assessors of the various counties in the State to assess all real and personal property at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and, in addition to that, they are required to make oath that they so assessed the property. Besides this, there is a board in each county, created by law, to revise the action of the county assessor, and to see that all the property is assessed at its fair cash value.

It will be observed that section 4020, Kentucky Statutes, in effect, commands *every officer*, *every board*, *and every commission* in the State, whose duty it is to assess property for taxation, to assess it at its fair cash value, estimated at the price it would bring at a fair voluntary sale. Any law which may have been in force which authorized the valuation and assessment of property for taxation at less than its fair cash value was repealed by section 172 of the Constitution. If there was any statute in relation to the assessment of property for

taxation which was inconsistent with the Constitution at the time of its adoption, it became inoperative thereafter, because, under the first subdivision of the schedule of the Constitution, all such acts are no longer to be in force. In addition to that provision of the Constitution, the Legislature declared inoperative, in effect, all laws which authorized any cfficer, board, or commission to value or assess property for taxation at an amount less than its fair cash value, if there was such a law in force.

Under section 4077, Kentucky Statutes, every corporation is liable to pay taxes on its franchise.

The Auditor, Treasurer, and Secretary of State are thereby constituted a Board of Valuation and Assessment for fixing the value of franchises for the purpose of taxation. Under section 4079, Kentucky Statutes, the corporations are required to make a report to the Auditor, giving certain information with reference to their property, with the view of enabling the board to value and assess the franchises; and in that section it is provided "that said board, from said statement, and from such other evidence as it may have, if such corporation, company or association be organized under the laws of this State, shall fix the value of the capital stock of the corporation, company or association, as provided in the next succeeding section, and from the amount thus fixed shall deduct the assessed value of all tangible property assessed in this State, or in the counties where situated. The remainder thus found shall be the value of its corporate franchise subject to taxation, as aforesaid."

In 1888 the State Board of Equalization and Assessment was created by an act of the Legislature, and amended in 1890. The law was not re-enacted after the adoption of the present Constitution, but Barbour &

Carroll's Kentucky Statutes (1894) contains the act as amended, which is embraced in sections 4268 and 4281, inclusive. It will be observed that there is a note by the compilers before section 4268 as follows: "This article was not a part of preceding section." The preceding act to which reference is made is the general revenue law of the State, which took effect November 11, 1892. For the purpose of this inquiry it is only necessary to quote certain sections of the act which read as follows:

"Sec. 4273. That the clerks of the various county courts of this Commonwealth are hereby required to make out an annual tabulated statement of all sales of real estate as shown by the deed books in their respective counties, on suitable blanks, which the Auditor is hereby required to furnish said clerks, and said clerks are required to make and file said tabulated statements on or before the first day of January in each year, town lots being kept separate from other real estate; said tabulated statements shall be for one year immediately preceding the fifteenth day of September, and shall contain a list of all sales of real estate, town lots being kept separate as aforesaid, the price paid, with terms and conditions, the number of acres, and the assessed value of same for the said year. Said tabulated statements shall only include sales where absolute fee simple title is given, and if only a part of a tract of land or town lot is sold, shall give a short description of same, and state what proportion the same may be of such tract of land or town lot. The said tabulated statement shall be sworn to by the said clerk before some person competent to take oaths as a full and complete statement of said facts for the period of one year previous to the fifteenth day of September. Said statement shall also be signed and sworn to by the county attorney and

county judge, and in their affidavits they shall state that they have examined the recorded and unrecorded conveyances filed for said twelve months preceding September the fifteenth last past, and each and every such conveyance (except those based on love and affection), with the consideration therefor correctly stated, is shown in said statement, and that the assessed values are correctly given in said statement. Said board shall have the authority to obtain and use any other evidence as to values, and whether or not the property conveyed has been assessed at a greater per centum of its actual value than in cases when property has not been conveyed. Said tabulated list shall be made out and sent to the Auditor of Public Accounts for the use of the State Board of Equalization. For his services in making said tabulated statement the clerk shall be paid a reasonable compensation by the county court of his respective county. If any clerk of any county in this Commonwealth fails to make out and send, by mail or otherwise, to the Auditor of Public Accounts, on or before the first day of February in each year, the tabulated list of sales, as provided in this act, he shall be fined not less than fifty nor more than two hundred dollars, upon indictment in any court of competent jurisdiction in this Commonwealth."

"Sec. 4274. The said Board of Equalization shall fix the percentage of assessed value of real property at seventy per centum of cash value, and all counties whose average lists of real property are below such per centum shall be raised to the same, and all those counties whose average lists are above the same, shall be lowered to said standard. The secretary of the State Board of Equalization shall report to the various county judges of this Commonwealth, as soon as possible, the action of the board in regard to their

respective counties, whereupon said judges may in their discretion, each appoint not exceeding five witnesses to appear under oath before said board in reference to the action of the board. The board shall then revise their action, or not, as they may think just and proper. Said witnesses must appear in a reasonable time, or they shall lose their right to be heard. The compensation and expenses of said witnesses, if any, shall be paid by their respective county courts."

"Sec. 4275. The said Board of Equalization shall also equalize the personal property of every county in this Commonwealth, by adding to or subtracting from the list of personal property, as the case may be, the same per centum as was added to or subtracted from the list of farm lands for the same county, and for this purpose the average per centum of assessed value to cash value of farm lands shall be used, and in determining such per centum fractions less than one-half shall be rejected and fractions of one-half and over shall be counted as one."

"Sec. 4277. Said board shall find the average percentage of asessed value to cash value of lands and town lots in any one county by taking in said tabulated statement the aggregate assessed values of all tracts of land and town lots, town lots being kept separate, and calculating what percentage said aggregate assessed values are of the cash value of the same, time payments being reduced to cash value on the basis of six per centum discount."

Considering sections 4273, 4274, and 4275, Kentucky Statutes, together, it is not unreasonable to conclude that the Board of Equalization and Assessment was only authorized to take seventy per cent. of the transfer values of property, and equalize assessments upon that

basis, and not upon seventy per cent. of the cash value. It is a matter of history (perhaps we can not take judicial notice of the fact) that the board has always increased the total value of the assessment of real and personal property in the State. However, it is unimportant to consider that question further, as the act creating the Board of Equalization and Assessment is not in force in so far as section 172 of the Constitution and section 4020 of the Kentucky Statutes are in conflict therewith. In other words, the Board of Valuation and Assessment can not equalize, except upon a basis of the cash value of the property assessed. If it attempted to do otherwise, any taxpayer of the State could, by appropriate proceedings, restrain it from doing so.

The contention of counsel for appellant is to the effect that, if other officers of the State disregard the constitutional provision and the statutes requiring them to assess property at its fair cash value, the courts should adjudge that the action of the Board of Valuation and Assessment in assessing franchises at their fair cash value, estimated at the price they would bring at a fair voluntary sale, should be set aside. It is certainly an unusual demand that the action of officers should be disregarded, although they may have acted in strict conformity to the law imposing the duty. The officers take an oath that they will faithfully discharge their duties, and, if they have due respect for their oaths, they are bound to follow the requirements of the organic and statutory law of the State. There never can be exact equality and uniformity in taxation. The purpose of the constitutional provision in question was to require all property to be assessed at its fair cash value. There is no way to execute that provision of the Constitution,

except officers be selected by the people for the purpose
of assessing the property, that revenue may be raised to
carry on the government.  It does not seem to be logical,
or sound in principle, to say that because one officer, or
a class of officers disregard the law, the action of those
who strictly follow it, *for that reason*, should be annulled.
If that be a proper view, then the constitutional provis-
ion and the statutes become a dead letter, and the courts
will be continually called upon to disregard the legal
actions of legally constituted officers because other of-
ficers in the State have acted illegally.  The court is call-
ed upon to constitute itself an instrument, not to uphold
the Constitution, but to make complete the utter disre-
gard of its provisions, by not sustaining a proper and
legal action of the officers of the State in the perform-
ance of their duties.  If the officers of the State are not
properly assessing the real and personal property of the
several counties of the State, and if the railroad com-
missioners of the State are not faithful in the discharge
of their duties in assessing the railroad property of the
State, then there must be a change of the personnel in
the various offices of the State so as to bring about a
condition, in so far as possible, that equality of as-
sessment and taxation can be had.  A speedier way would
be to enforce the penal and criminal statutes of the
State, if they are being violated.  If they are, the pros-
ecution of an officer would suffice to correct the evil com-
plained of.  It may be said that this will take time, and
cause some of the taxpayers of the State to bear an un-
equal proportion of the burdens of taxation.  It is far
better that this should be done for a short time, rather
than for the courts to adjudge illegal that which the
organic law of the State declares is legal.  We can not

give our consent to declare void a proceeding because such proceeding *conforms to the law.*

Substantially the same question involved in this case was under consideration in the case of City of Lowell v. County Commissioners of Middlesex, 152 Mass., 375, [25 N. E., 470] The court said: "It is a violation of the statutes knowingly to make a valuation of property for the purpose of taxation at less or more than its full and fair cash value. The just proportion intended by the existing statute is attained by assessing the property of different persons at a uniform rate, upon its fair cash valuation. Whatever may be the remedy, if there be any, when it is shown that the assessors have intentionally assessed the property of a part or all of the inhabitants at less than its fair cash value, we are of the opinion that in a petition for the abatement of taxes on the ground of the overvaluation of the property of the petitioner, and the disproportionate taxation arising from such overvaluation, the question is whether the property has been valued at more than its fair cash value, and not whether it has been valued relatively more or less than similar property of other persons."

In New Jersey the question arose under laws somewhat similar to the laws of Kentucky; and the court, in Central R. R. Co. v. State Board of Assessors, 48 N. J. Law, 7; [57 Am. R., 1; 7 Atl., 792], said: "The establishment of this system was much criticized by counsel; a prominent argument being that it necessarily introduced inequalities in the valuation of property for taxation, and that by force of its operation such valuation was not made, as the Constitution requires, by a uniform rule, but by a multiform rule. And, in support of this contention the attention of the court was directed to the

fact (which had been established, not only by the testimony, but by the report of the State board of assessors itself) that, although it was the universal practice of the assessors of the different tax districts to rate property much below its real value, the State board had rated this corporate property at its true value. That this discrepancy, arising out of the practical operation of the methods of valuation, existed, was not disputed. But this result, it is manifest, was not the legal or proper result of the plan of assessment thus introduced by the Legislature. That plan provided but one measure of valuation (that is, the true value of the taxable property), and that measure was to be applied alike by the local assessors and the State board; so that, if both sets of officers had performed their duty, there would have obtained that unity of rule that the Constitution demands. The local officers disobeyed the injunction of the law; and the contention is that the State officers should have pursued the same forbidden course, and that their acts should now be declared to be abortive, because they refused to perpetrate such a malfeasance. Such an argument, in our estimation, has no force whatever, and indeed, it seems a novel suggestion that a court should annul a proceeding because such proceeding conforms to the law."

The Board of Valuation and Assessment is required, under the law, to ascertain the value of franchises. After it has acted, then the corporation having the franchise has a right to be heard before the board on the question as to whether the franchise has been properly assessed. The suggestion is that the board assessed the franchises without regarding the question as to the limit of time they were to run. The

[ 46 ]

appellant was heard before the board, and it considered all of the questions necessary, and fixed the value of the franchises; and, on the facts alleged in the answer, we must regard the action of the board final and conclusive. The board had the right to take into consideration the gross and net earnings of the appellant, in reaching a conclusion as to the value of its capital stock.

In so far as this record shows, the board followed precisely the statute which regulates the method of ascertaining the value of franchise. They seem to have ascertained the value of the capital stock of the appellant, and from that deducted the tangible property assessed in the State, and the remainder thus found was fixed by the board as the value of the franchises subject to taxation. The board reached the conclusion that the appellant's property was of the value of $6,660,000, and, as they fixed the franchise at $5,488,655, it would show that the tangible property was of the value of $1,171,345. The board seems to have determined the value of the appellant's property was equal to a sum of money which, at the rate of six per cent. per annum interest, would produce a sum of $400,-000, as its net income for the year preceding the assessment amounted to that sum, which is equal to about thirty-five per cent. of the tangible property of the appellant.

This court has so often recognized the constitutionality of the act creating the Board of Valuation and Assessment, that it is unnecessary to consider the matter here. The judgment is affirmed.