COMMONWEALTH *vs.* WEINFIELD'S INCORPORATED

(and two companion cases).

Norfolk.   November 6, 1939. — January 30, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Labor.   Evidence,* Extrinsic affecting writing.   *Contract,* Of employment. *Agency,* What constitutes.

Conversations and understandings between the proprietor of a cleansing and dyeing business and one named as lessee in an instrument which purported to be a lease of a retail store from the proprietor properly were considered, as well as the terms of the instrument, in determining that the instrument was not a lease but was a cover for an illegal transaction whereby the so called lessee became an employee of the so called lessor to work for him on terms violating G. L. (Ter. Ed.) c. 149, § 56, as amended by St. 1935, c. 200.

THREE COMPLAINTS, received and sworn to in the District Court of East Norfolk on November 23, 1938.

On appeal to the Superior Court, the complaints were heard by *Buttrick,* J.

*A. I. Burgess,* for the defendant, submitted a brief.

*G. L. Rabb,* Assistant District Attorney, for the Commonwealth.

DOLAN, J.   These three complaints against the same defendant were tried together in the Superior Court, upon an agreed statement of facts, before a judge sitting without a jury.   The defendant was found guilty in each case.   The cases are reported to this court for the determination of the questions presented by the complaints and agreed facts.

The defendant is charged with three violations of G. L. (Ter. Ed.) c. 149, § 56, as amended by St. 1935, c. 200 (since

amended by St. 1939, c. 377), in that it (1) employed or permitted a woman to work more than nine hours in one day; (2) employed or permitted a woman to work more than forty-eight hours in one week; and (3) employed or permitted a woman to work hours other than those stated on the posted printed notice required by the statute.

The defendant is a Massachusetts corporation engaged in the cleansing and dyeing business. It maintains a factory in Boston and retail stores in several places in the Commonwealth. In April, 1938, one Angeline Michaud, in response to a newspaper advertisement, went to the establishment of the defendant and talked with Richard Weinfield, the treasurer of the defendant. He inquired as to her experience "in the line of work" and told her he "would let her know" in a few days. Shortly thereafter Weinfield telephoned Michaud and she reported to him. He told her that in order to work she would have to "sign a lease."

The lease that Michaud executed with the defendant described her as lessee and the defendant as lessor. It provided for the lease of one of the defendant's stores in Quincy for one year. The rent was fixed as "all the income from said premises received by the Lessee . . . by way of receipts from the retail cleaning and repairing of garments, shoes, laundry and furnishings, except the sum of 12 dollars per week." The lessee was to use her best endeavors and utmost exertions to introduce the services of the lessor to the public, and was required to keep accurate records on stationery furnished by the lessor, and to send all goods received for cleaning and repairing to the lessor. The lessor permitted the lessee to use the name "Weinfield's Inc.," and agreed, with certain limitations, to defend actions brought against the lessee for damage to or loss of goods. It was further provided that the lessor might enter the leased premises in case of a default in the payment of rent, and also to view and make improvements. The instrument provided for termination of the lease by one week's notice by either party.

In her conversation with Weinfield, Michaud was told she would have to open the store at 8 A.M. and close it at

6 P.M., and that she was "to bring her lunch." The agreed statement contains Weinfield's statement that Michaud had keys to the premises and could come and go as she wished. On Saturdays Weinfield came to the store and told her what prices were to be charged and what special sales were to take place. All the moneys received by Michaud in the store were turned over, without any deduction therefrom, to Weinfield or to one or another of his employees. On each Tuesday or Wednesday Michaud received an envelope containing $12 from the driver of the defendant's truck. A notice was posted in the store stating that her hours of work were to be from 8:30 A.M. to 6 P.M. from Mondays to Fridays, inclusive, with an hour for lunch each day, and that on Saturdays she was to work from 8:30 A.M. to 2 P.M.

On October 18, 1938, Michaud worked in the store ten hours. During the week ending October 22, 1938, she worked there fifty-nine hours. On Saturday, October 22, 1938, she worked until 5 P.M. when one Helen Chansky, an employee of the defendant whose duties were those of an "inspecting relief girl," entered the store, took over the cash receipts from Michaud and took charge of the store. Michaud then left the premises and thereafter Chansky waited on customers up to 9 P.M. An inspector of the department of labor and industries had visited the store on October 17, 18, 19, 20 and 22. Subsequently Michaud "was relieved of her employment without notice and by the verbal statement of Richard Weinfield, treasurer of the defendant corporation, but was paid $24 in lieu of notice."

The defendant contends that it does not appear from the record, beyond a reasonable doubt, that the period of work in excess of that prescribed by the statute was required by the agreement for lease or permitted by the defendant; that no relationship of employer and employee was created under the lease because nothing in the instrument gave the defendant the right to control the hours of work of Michaud; and that parol evidence is not admissible to contradict or vary the terms of the lease, and is not to be used against it, even though the evidence has been admitted. *O'Malley* v. *Grady*, 222 Mass. 202. This rule, however, does not extend

to evidence that shows that the contract was made in violation of a statute, and parol evidence is admissible to show that a writing valid on its face is a mere cover for an illegal transaction. "If such evidence is not admissible, parties can always control the laws, by the terms of their contracts; and in order to defeat an illegal contract, it would be necessary that the parties should be weak enough to expose the illegality in the instrument they adopt for their security." *Russell* v. *DeGrand*, 15 Mass. 35, 38. *Allen* v. *Hawks*, 13 Pick. 79, 83. *Sherman* v. *Wilder*, 106 Mass. 537, 539. *Kuhn* v. *Buhl*, 251 Penn. St. 348. *Lyman* v. *Kimball*, 82 N. H. 232, 233. *Jones* v. *Franklin*, 160 Va. 266, 270. *Miller* v. *Anderson*, 183 Wis. 163, 169. Am. Law Inst. Restatement: Contracts, § 238 (b). See *Stackpole* v. *Arnold*, 11 Mass. 27, 32. *Guaranty Security Corp.* v. *Eastern Steamship Co.* 241 Mass. 120, 123. *Tripp* v. *National Shawmut Bank of Boston*, 263 Mass. 505, 511. The agreed facts as to the conversations and understandings between the defendant's treasurer and Michaud when the lease was executed may properly be considered as tending to show an illegal scheme on the part of the defendant, whereby Michaud was to work hours in excess of those prescribed by the governing statute. See *Clemens Electrical Manuf. Co.* v. *Walton*, 173 Mass. 286, 300.

A consideration of the lease and the agreed facts leads to the conclusion that the relationship between the defendant and Michaud was that of employer and employee. Although the method providing for payment is not controlling, it may well be important. *McDermott's Case*, 283 Mass. 74, 76. The unusual method adopted in the lease is significant. The fact that the "rent" was to be all the sums received by Michaud except $12 a week makes it appear unlikely that she was pursuing her own business and enjoying its profits, and the further fact that this sum was not deducted by her but was paid to her weekly by an employee of the defendant indicates that she was regarded and treated as an employee, and stood in that relationship to the defendant. Other significant facts leading to that conclusion are these: that the defendant fixed the prices to be

charged by Michaud, arranged special sales, required the keeping of records and controlled the method of record since it supplied the stationery therefor; that Michaud did not do business in her own name; and that the "inspecting relief girl" took charge of the store on Saturday, October 22, 1938, and took the cash receipts from Michaud. Since the lease was terminable on a week's notice, the defendant had a potent weapon with which to enforce the understanding had with Michaud at the time of the execution of the lease. Although the defendant contends that Michaud had the keys to the store and could come and go as she pleased, it nevertheless appears that its treasurer told her when she was to come and go, and even told her that she was to bring her lunch with her.

The posting of the notice of hours of work is not without significance. The defendant contends that it does not appear whether the information contained therein was furnished by it, by Michaud, or by a third person, but it seems obvious that Michaud would have no reason for posting such a notice, and that the defendant, as an employer conforming to the terms of G. L. (Ter. Ed.) c. 149, § 56, as amended, would have the duty to post it. It is a fair inference that it did so.

The governing statute effective at the date of the acts of the defendant that are complained of (G. L. [Ter. Ed.] c. 149, § 56, as amended by St. 1935, c. 200) forbids the employment of women in certain places including "mercantile" establishments for "more than nine hours in any one day" or for more than forty-eight hours a week, with certain exceptions not here material. Since we are of the opinion that the agreed facts warrant findings that Michaud was an employee of the defendant, and that the latter employed or permitted her to work more than nine hours in one day and more than forty-eight hours in one week, and employed and permitted her to work hours other than those stated on the printed notice required by the statute, it follows that the finding of the judge that the defendant was guilty of these violations of the statute was not erroneous.

*Judgment on the finding in each case.*