SHOPPERS' WORLD, INC. *vs.* BOARD OF ASSESSORS OF
FRAMINGHAM.

Suffolk.   December 9, 1964. — January 15, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Taxation,* Real estate tax: assessment, abatement; Assessors; Appellate
Tax Board: petition. *Constitutional Law,* Taxation. *Evidence,* Of
action by public board, Competency.

Where a petition on appeal to the Appellate Tax Board from a denial of
an application for an abatement of a real estate tax specified only a
valuation of the taxpayer's property in excess of its fair cash value,
but the taxpayer at the hearing, by proferred evidence excluded by the.
board and requests for rulings refused by the board, sought to present
a case based on disproportionate assessment of the taxpayer's property
in relation to other assessments, the failure of the petition to set forth
such a case as required by G. L. c. 58A, § 7, and Rule 3 of the Rules of
Practice and Procedure of the board might, on remand to the board for
further proceedings, be remedied by amendment.   [370–371]

An assessing practice of a board of assessors, not claimed or shown to
have been adopted by formal, recorded action of the board, might prop-
erly be proved by oral testimony.   [371–372]

If the assessors of a town in fact had adopted a practice of assessing
properties generally at a certain percentage of fair cash value but of
assessing a particular taxpayer's property at a higher percentage, al-
though at a figure not exceeding its fair cash value, G. L. c. 59, §§ 59,
64, 65, taken in conjunction with c. 58A, § 12B, would afford the tax-
payer a remedy, as constitutionally required, for such disproportionate
assessment by abatement making the taxpayer's assessment proportional
to other assessments; and in a proceeding under c. 59, §§ 59, 64, 65, it
would be open to the taxpayer to prove the assessors' practice.   [372,
376–378]

APPEAL from a decision by the Appellate Tax Board.

*Charles M. Ewing* (*Joseph P. Warner* with him) for the
taxpayer.

*David A. Foley* (*Alden Seltzer* with him) for the Board
of Assessors of Framingham.

CUTTER, J.   Shoppers' World, Inc. (the taxpayer) owns
82.10 acres of land (the locus) in Framingham.[1]   The as-

[1] The taxpayer's petitions concerning the 1960 and 1961 taxes with respect
to another Framingham parcel were heard at the same time.   By stipulation
these petitions and that concerning the 1961 tax on the locus, as to issues of
law, are to be governed by this decision.   It was also stipulated that the case
would be submitted to the board upon the record and the written reports of
experts, without cross-examination, for the purpose of obtaining from this
court a decision upon the questions of law presented by the board's rulings on
evidence and upon the taxpayer's requests for rulings.

sessors valued the locus in 1960 and 1961 at $393,400, and assessed at that valuation a real estate tax in each year. For each year an application for abatement was filed and an appeal[2] taken to the Appellate Tax Board (the board). The present appeal deals with the 1960 tax.

Experts' appraisal reports (see fn. 1) put in evidence by the taxpayer indicated that the fair market value of the locus on January 1 of each of the years 1960 and 1961 was $330,000 or $335,000. An expert's report placed in evidence by the assessors indicated that the locus then had a fair market value of $1,035,000. The board found that the locus in each year "was not assessed at more than its fair cash value," and rendered a decision for the assessors. The taxpayer's appeal to this court presents the questions whether the board correctly (a) excluded certain evidence and (b) denied the taxpayer's twenty requests for rulings. Designated sections of the evidence are before us. The following additional facts are relevant.

The taxpayer called as a witness one Dolan, who had been chairman of the assessors in 1960 and 1961. He was asked, "Now . . . was there a uniform practice on the part of the [a]ssessors in Framingham of assessing properties at 45% of their full fair cash value?" The board sustained an objection to the question. The taxpayer saved an exception and offered to prove "that the uniform practice deliberately adopted by the . . . [a]ssessors in . . . 1960 and 1961, was to assess all the properties in the town . . . commercial, industrial or otherwise — at 45% of what the [a]ssessors regarded as their full fair cash value."

A lawyer practising in Framingham was asked about statements made to him by one or more assessors con-

---

[2] The 1960 application for abatement showed the cost of the locus in 1952 to have been $54,603.82 and stated as the reason for the application that the "[t]axpayer requests abatement of excessive tax assessed on valuation . . . in excess of fair value of $67,900," and as the "contentions of law raised" that the application was filed pursuant to G. L. c. 59, § 59, "[a]ssessment of property in excess of fair cash value." The 1960 petition to the Appellate Tax Board stated that the taxpayer objected to the assessors' decision "on the ground that the property was over-valued." It prayed "that such portion of the tax as may be determined to be excessive be abated, and for such further relief as may be proper."

cerning "their uniform policy . . . with respect to assessments" in relation to fair cash value. The witness was not permitted to answer. An exception was noted. The taxpayer offered to prove that one or more assessors "on numerous occasions" had admitted to the witness the existence of a uniform policy "of assessing properties throughout the town at the general rate of 45% of full fair cash value."

By stipulation the taxpayer was permitted to submit an offer of proof that the then current chairman of the assessors would testify, if present, that an "outside survey appraisal concern" proceeded to appraise each property in town at its full fair cash value, and that the assessors computed forty-five per cent of each such amount, and carried it on their books as the 1957 assessment of the parcel to which it related. The board ruled, subject to the taxpayer's exception, that this evidence, if offered through the chairman of the assessors in person, would be excluded.

The board denied all the taxpayer's requests for rulings. Examples of these requests are set out in the margin.[3]

1. The assessors in effect contend that the taxpayer is barred from making any claim before the Appellate Tax

[3] Representative requests were, "9. If the . . . [assessors] intentionally assessed substantially all the real property in Framingham at 45% of its fair cash value and intentionally assessed . . . [the locus] at a higher ratio, the . . . [taxpayer] is entitled to an abatement of its tax to the extent that the percentage of fair cash value assessed exceeded 45%. . . . 12. It would be no defense to the . . . [assessors] in the circumstances set forth in each of the . . . foregoing requests, that . . . [they] valued the . . . real property at an amount equal to, or less than, the fair cash value. 13. The exclusion of competent evidence tending to show that property the taxes on which the . . . [taxpayer] was required to pay were assessed at a ratio of fair market value substantially higher than the ratio applied to the property of others in . . . Framingham in 1960 would itself constitute a denial of due process under" the Fourteenth Amendment. . . . 17. It is the obligation of the . . . [b]oard . . . to determine as a fact whether or not the . . . [a]ssessors used some uniform percentage of fair cash value less than 100% in determining assessed values on real estate in . . . Framingham as of January 1, 1960. 18. If the . . . [b]oard finds that the [a]ssessors used a uniform percentage of fair cash value less than 100% in determining the assessed values of real estate in . . . Framingham as of January 1, 1960 . . . the . . . [board must] apply the same percentage to the fair cash value of the . . . [taxpayer's] property as found by it in this proceeding, and . . . find for the . . . [taxpayer] to the extent, if any,. that the actual assessment exceeds the figure so determined." Other requests asserted that the board's action as applied to the taxpayer involved a denial of rights under the due process and equal protection provisions of the Fourteenth Amendment.

Board other than that the locus was assessed for more than its fair cash value. See G. L. c. 58A, § 7 (as amended through St. 1953, c. 654, § 25).[4] The petition (see fn. 2), say the assessors, alleges merely overvaluation of the locus, and not that there was disproportionate assessment of the locus in relation to other property assessments. Consequently, they say, it is not open to the taxpayer to offer evidence that, in general at least, the assessors intentionally placed other assessments on a basis of forty-five per cent of fair cash value, whereas the locus they assessed at a higher percentage of full, fair cash value. They suggest that the offered evidence tends to show that the taxpayer was "taxed at more than . . . [its] just proportion" rather than "upon an assessment of any of . . . [its] property in excess of its fair cash value."[5]

As a matter of mathematics and practical effect upon the taxpayer, the locus was overvalued, as well as disproportionately assessed, if other properties in town were intentionally assessed at forty-five per cent of fair cash value and the locus was assessed at a higher percentage of fair cash value. See *Stone* v. *Springfield,* 341 Mass. 246, 251. If the assessors in fact have adopted, either formally or informally, a practice or standard of valuation in which each dollar of land value is treated as being worth only forty-five cents, then, as a matter of common sense, a single property or group of properties to which the standard is not applied is overvalued.

---

[4] Section 7 reads in part, "The petition upon such appeal shall set forth specifically the facts upon which the . . . [appellant] relies, together with . . . the contentions of law which . . . [he] desires to raise. . . . The board shall not consider, unless equity and good conscience so require, any issue of fact or contention of law not specifically set out in the petition upon appeal or raised in the answer." Rule 3 of the Rules of Practice and Procedure of the Appellate Tax Board (1959) requires that the petition contain "(c) A clear and concise statement of the appellant's objections to the decision or determination appealed from, and of the contentions of law, if any, which the appellant desires to raise."

[5] General Laws c. 59, § 59 (as amended through St. 1946, c. 199, § 1; see later amendment by St. 1963, c. 125) provides, in part, that the taxpayer may make an application for abatement "in writing to the assessors, *on a form approved by the commissioner* [of corporations and taxation] . . . and if they find him taxed *at more than his just proportion,* or upon an assessment of any of his property in excess of its fair cash value, they shall make a reasonable abatement . . ." (emphasis supplied).

We decide later in this opinion that a taxpayer, upon suitable allegation and proof, has a remedy for the type of disparity of treatment which this taxpayer now seeks to prove, under G. L. c. 59, § 59, as amended, and by appeal to the Appellate Tax Board under G. L. c. 59, §§ 64 and 65 (most recently amended, respectively, by St. 1956, c. 544, and by St. 1945, c. 621, § 6). In pursuing that remedy, however, it is incumbent upon a taxpayer to set out in his petition to the board the precise nature of his contentions, and the facts upon which they are based, when he seeks relief from an overvaluation of his property somewhat different in character from that in the ordinary overvaluation case where the assessors and the taxpayer disagree merely about the fair cash value of a property intended to be assessed at full fair cash value. See *Stone* v. *Springfield,* 341 Mass. 246, 251, and *Leto* v. *Assessors of Wilmington, ante,* 144, 148, discussing the importance of clear allegations of the facts concerning widespread nonproportional assessments at levels below fair cash value.

This taxpayer has not met the standards of pleading set out in these cases. Although applications for abatement to the assessors (on the printed form approved by the commissioner) are necessarily very general, the taxpayer's petition to the board (see fn. 2) makes only slight variations in the standard petition form set out in the board's rules (see appendix, pp. 20–21), which is "subject to amendment as circumstances may render necessary or expedient." We think, however, that the taxpayer should not be finally denied relief because of the form of its petition if it can substantiate its offers of proof. The assessors do not seem to have been misled by the petition or to have been taken by surprise by the issues raised by the taxpayer. In fact, commendably, they have joined in stipulations to facilitate the presentation and decision of the legal issues now before us. Although the petition was filed in February, 1961, with the board several months after our decision in the *Stone* case, the facts stated in the offers of proof do not seem as complicated as those outlined in the declaration in the *Stone* case (see 341 Mass. 246, 247), and it was probably natural

for the taxpayer to employ the board's standard petition form, where the taxpayer's complaint was based on one type of overvaluation. An amendment of the petition probably would have been sought, and appropriately should have been granted, if the stated ground of the assessors' objections to the offered evidence had been explicitly that the petition was not broad enough to permit introduction of the evidence. The particular ground of the assessors' objection to the offered evidence does not appear plainly, but seems to have been that no attack at all on an assessment could be made in a proceeding under G. L. c. 59, §§ 59, 64 and 65, because of any "general practice" of the assessors "to assess [property] for less than its fair cash value." In view of the uncertainty concerning the applicable law when the petition was filed and heard, we think that the matter should be remanded to the board for further proceedings, including considering whether amendment of the petition and further hearing of the amended petition are now appropriate. See G. L. c. 30A, § 14 (8).

2. The assessors contend that their assessing practices may be proved only by the official records of the board. We need not decide whether this would be true with respect to action in fact taken at assessors' meetings, if required by statute to be recorded. See G. L. c. 39, § 23A (as amended through St. 1960, c. 437, § 3; see later amendment by St. 1964, c. 195); *Carbone, Inc.* v. *Kelly,* 289 Mass. 602, 605; *New England Box Co.* v. *C. & R. Constr. Co.* 313 Mass. 696, 702. There is no showing of, or attempt to show, any formal action by the assessors, nor is there any effort to vary any official record, for none has been shown to exist. Indeed, it is unlikely that a public board would formally adopt, by a vote set forth in its official records, a wholly illegal practice, such as a policy of assessing all land at less than 100% of full fair cash value. See G. L. (Ter. Ed.) c. 59, §§ 38, 52; *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 231–232; *Leto* v. *Assessors of Wilmington, ante,* 144, 146–147. Even if they did formally adopt, by recorded vote, a policy conforming with applicable law, we assume that it would be open to a taxpayer to prove, if he could,

in a case where the issue was presented for decision, that in practice a different, unlawful policy was applied and that the record was "a mere cover for an illegal" policy. *Commonwealth* v. *Weinfield's, Inc.* 305 Mass. 108, 111. See *Russell* v. *De Grand,* 15 Mass. 35, 38; *Scullin* v. *Cities Serv. Oil Co.* 304 Mass. 75, 79, 84. That oral proof was offered of an official action, in fact illegal (if the evidence turned out to be true), did not warrant exclusion of the evidence.

3. The principal issue is whether G. L. c. 59, §§ 59, 64, and 65, as amended, afford to the taxpayer any remedy for an assessment of the locus at a higher percentage of fair cash value than that at which it is the policy of the board to assess other properties in Framingham, even if the locus is not assessed at a figure above its fair cash value. The case presents in a somewhat different aspect the general problem of unequal and nonproportional property tax assessments considered in *Amory* v. *Assessors of Boston,* 306 Mass. 354, *Amory* v. *Assessors of Boston,* 310 Mass. 199, *Carr* v. *Assessors of Springfield,* 339 Mass. 89, and *Stone* v. *Springfield,* 341 Mass. 246. All of these cases have been discussed recently in *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223. See *Opinion of the Justices,* 344 Mass. 766, 768; *Leto* v. *Assessors of Wilmington, ante,* 144, 147. As the authorities just cited show, the statutes governing the assessment, collection, and abatement of local property taxes, and the recovery of such taxes when illegally assessed (see G. L. c. 60, § 98; see also c. 59, § 82), contemplate that the assessors will faithfully perform their sworn duty to assess all taxable property at its full, fair cash value. See G. L. (Ter. Ed.) c. 59, § 52, requiring assessors to certify under the penalties of perjury that the annual valuation list "is a full and accurate assessment upon all the property of each person, liable to taxation, at its full and fair cash value."

When assessors fail to assess property generally at full, fair cash value, they are likely to find themselves and their community confronted with the "dilemma" referred to in *Sioux City Bridge Co.* v. *Dakota County, Nebraska,* 260 U. S. 441, 446, "where one or a few of a class of taxpayers

are assessed at 100 per cent of the value of their property in accord with a constitutional or statutory requirement, and the rest of the class are intentionally assessed at a much lower percentage in violation of the law.'' In that case the Supreme Court of the United States held ''that the right of the taxpayer whose property alone is taxed at 100 per cent of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law.'' See *Cumberland Coal Co.* v. *Board of Revision of Tax Assessments,* 284 U. S. 23, 28–30 (''. . . the intentional, systematic undervaluation by state officials of taxable property of the same class belonging to other owners contravenes the constitutional right of one taxed upon the full value of his property''), cited with approval in *Opinion of the Justices,* 332 Mass. 769, 779–780; *Opinion of the Justices,* 341 Mass. 738, 750–759. See also *Chicago, B. & Q. R.R.* v. *Osborne,* 265 U. S. 14, 15–17; *Bohler* v. *Callaway,* 267 U. S. 479, 489; *Hillsborough* v. *Cromwell,* 326 U. S. 620, 623. Cf. *Opinion of the Justices,* 341 Mass. 760, 770–780. Cf. also *Rowley* v. *Chicago & N. W. Ry.* 293 U. S. 102, 111; *Snowden* v. *Hughes,* 321 U. S. 1, 8–9. Whatever the reasons[6] may be for the type of action by assessing officials referred to in the opinions just cited, such action causes injury to those taxpayers against whom they discriminate, for which the taxpayers are constitutionally entitled to an adequate remedy.

Some earlier cases in Massachusetts indicated that G. L. c. 59, § 59, and its predecessors, did not permit any relief of the type which this taxpayer seeks. In *Lowell* v. *County Commrs. of Middlesex,* 152 Mass. 372, 375, it was said, ''The just proportion intended by the existing statutes is attained by assessing the property of different persons at a uniform

---

[6] See discussion in notes, 46 Harv. L. Rev. 1000; 75 Harv. L. Rev. 1374, 1377–1380.

rate, upon its fair cash valuation. Whatever may be the remedy, if there be any, when it is shown that the assessors have intentionally assessed the property of a part or all of the inhabitants at less than its fair cash value . . . in a petition for the abatement of taxes on the ground of . . . overvaluation . . . and the disproportionate taxation [thereby] arising . . . the question is, whether the property has been valued at more than its fair cash value, and not whether it has been valued relatively more or less than similar property of other persons." It was held that the county commissioners erroneously admitted evidence of the assessments of other properties to show that the assessment of the petitioner's property (p. 376) was "relatively greater than that put upon the property of other persons, as well as a valuation in excess of the fair cash value of the property." See *Tremont & Suffolk Mills* v. *Lowell,* 271 Mass. 1, 16; *Revere* v. *Revere Constr. Co.* 285 Mass. 243, 247. See also *Amory* v. *Assessors of Boston,* 306 Mass. 354, 357, and the case of the same name, 310 Mass. 199, 202–203.

General Laws, c. 59, § 59 (see fn. 5), in terms empowers assessors to make a reasonable abatement to a taxpayer "if they find him taxed at more than his just proportion" and c. 59, §§ 64 and 65, purport to give an administrative review to taxpayers "aggrieved by the refusal of assessors to abate a tax." The language of these sections, read literally, would provide to taxpayers an administrative remedy as broad as that to which the *Sioux City Bridge Co.* case says they are constitutionally entitled, were it not for the decision seventy-four years ago in the *Lowell* case, and similar cases, interpreting the statutory language very narrowly. The effect of the *Lowell* decision, however, has been greatly weakened by the Legislature, through the enactment of G. L. c. 58A, § 12B, inserted by St. 1950, c. 262. Section 12B provides that at "any hearing relative to the assessed valuation of property, evidence as to the valuation at which assessors have assessed other property of a comparable nature shall be admissible." The legislative history (see 1950 House Doc. No. 1515) of § 12B does not dis-

close whether it was enacted in part to meet the require-
ments of the *Sioux City Bridge Co.* case, 260 U. S. 441, and
the other decisions of the Supreme Court of the United
States, already cited. In any event, the section is clearly
directed in a general way to much the same problem. Al-
though it makes no direct amendment of c. 59, §§ 64 and 65,
it necessarily implies some broadening of the remedy pro-
vided by those sections. If the board may consider the
assessments of other comparable properties, by necessary
implication it may give weight to them and to the valuation
standards in accordance with which they are made.

This court has not yet had occasion to consider the rule
of the *Lowell* case (152 Mass. 372, 375) in the light of the
*Sioux City Bridge Co.* case and of the enactment of § 12B.
See Nichols, Taxation in Massachusetts (3d ed.) 66–67. It
is possible, of course, that the *Lowell* case would have been
decided differently if the *Sioux City Bridge Co.* line of de-
cisions had then existed, or if the taxpayer in that case had
established a deliberate scheme of nonproportional assess-
ment. In any event, the later Supreme Court decisions
establish that a remedy must be available to those injured
by such a scheme and that the reasoning (see 46 Harv. L.
Rev. 1000, 1002–1003) of the *Lowell* case cannot now be ap-
plied to such a scheme.[7]  The ordinary meaning of the stat-
utory language of G. L. c. 59, §§ 59, 64, and 65, is amply
broad to afford an administrative remedy which will fairly
protect taxpayers' constitutional rights, and the enactment

---

[7] The problem now presented is by no means confined to Massachusetts. See
Hill, Remedies Available to a Disproportionately Assessed Taxpayer in New
York State, 5 Buffalo L. Rev. 145, and notes; 42 B. U. L. Rev. 246; 75 Harv.
L. Rev. 1374; 17 U. of Miami L. Rev. 413; 62 West Va. L. Rev. 70; 68
Yale L. J. 335, 339–341, 344. Court cases dealing with comparable problems
include *Hamm* v. *State,* 255 Minn. 64, 70–71, *Renneke* v. *Brown County,* 255
Minn. 244, 248, *Appeals of Kents 2124 Atlantic Ave. Inc.* 34 N. J. 21, 25–34,
*Brooks Bldg. Tax Assessment Case,* 391 Pa. 94, 100–102. See *Monroe Bond &
Mortgage Co.* v. *State ex rel. Hybart,* 254 Ala. 278, 282–285; *State* v. *Alabama
Power Co.* 254 Ala. 327, 340; *Southern Pac. Co.* v. *Cochise County,* 92 Ariz.
395, 402–403; *Sears Roebuck & Co.* v. *State Tax Commn.* 214 Md. 550, 558–
560, but see *National Can Corp.* v. *State Tax Commn.* 220 Md. 418. See also
*Pierce* v. *Green,* 229 Iowa, 22, 44; *Baken Park, Inc.* v. *Pennington County,*
79 S. D. 156, 162–164; *Skyline Swannanoa, Inc.* v. *Nelson County,* 186 Va.
878, 881. Cf. *People ex rel. Callahan* v. *Gulf, M. & O. R.R.* 8 Ill. 2d 66, 70;
*Builder's, Inc.* v. *Board of County Commrs.* 191 Kans. 379, 385–386; *Robinson*
v. *State Tax Commn.* 216 Ore. 532, 536–538; but see *Reynolds Metal Co.* v.
*State Tax Commn.* 227 Ore. 467, 473.

of § 12B emphasizes the propriety of a much less restricted interpretation of the administrative remedy than was given in the *Lowell* case.

We are fortified in this view when we consider the practical effect of continuing to apply the *Lowell* case rule. If we were to hold that there is no administrative remedy for nonproportional assessment, then the alternative method of affording to taxpayers their constitutional rights necessarily would be (1) to treat as wholly illegal and void essentially all systematic nonproportional tax assessments and all tax levies involving the intentional assessment of a substantial number of properties at less than full, fair cash value or on a discriminatory basis, and (2) to remit taxpayers to actions at law under G. L. c. 60, § 98, to recover illegal taxes paid under protest, or to drastic equitable proceedings of the type considered in the *Bettigole* case, 343 Mass. 223, and in the *Leto* case, *ante*, 144. In those cases we discussed various serious difficulties likely to be attendant upon the exercise of either of these two types of remedy (see e.g. 343 Mass. 223, 237, referring to the possibility of a multiplicity of actions to recover illegally assessed taxes, and to the risk of public fiscal confusion). These difficulties[8] provide persuasive reasons for viewing the statutes relating to the administrative remedy, as affected by c. 58A, § 12B, as broad enough to protect taxpayers' constitutional rights to the extent required by the decisions of the Supreme Court of the United States.[9]

The language of G. L. c. 59, §§ 59, 64, and 65, and of c. 58A, § 12B, must be given full effect, at least to the extent

---

[8] These difficulties are likely to have minimal effect in proceedings before an administrative board, with flexible procedures, charged solely with tax review duties. Such a board can effect some consolidation of cases from a single community. Such action may tend to reduce the duplication of proof likely to occur in a series of separate court cases.

[9] Reëxamination of the scope of remedies is not unusual, and may be essential, to meet evolving constitutional interpretations. An example of this is the gradual and necessary expansion of the statutory writ of error (G. L. c. 250, §§ 1, 9) as a postconviction remedy broad enough to deal with constitutional problems arising under recent decisions of the Supreme Court of the United States. Compare *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 376, *S. C.* 272 Mass. 25, 28, with *Brown* v. *Commonwealth*, 335 Mass. 476, 479–480; *Sandrelli* v. *Commonwealth*, 342 Mass. 129, 141–143; and *Letters* v. *Commonwealth*, 346 Mass. 403.

and in the manner permitted by the *Sioux City Bridge Co.*
case. We construe these sections as providing a remedy to
a taxpayer who is able to prove that there existed an inten-
tional policy or scheme (see the *Leto* case, *ante,* 144, 148,
fn. 5) of valuing properties or classes of property at a
lower percentage of fair cash value than that percentage
in fact applied to the taxpayer's own property. We do not
purport now to state what limits, if any, there may be to
such proof (see the *Stone* case, 341 Mass. 246, 250–251) for
any such statement must be postponed until particular cases
are before us for decision.

In this proceeding under G. L. c. 59, §§ 59, 64, and 65, the
taxpayer seeks to show a simple form of discrimination
against it, viz. that substantially all other Framingham
properties are, as a matter of policy, assessed at forty-five
per cent of fair cash value, while this taxpayer's properties
are assessed at a higher percentage of full, fair cash value.
The offered proof, if it can be substantiated, need not be
unduly complicated and outlines a scheme closely similar to
the assessment pattern discussed in the *Sioux City Bridge
Co.* case. We hold that it is open to the taxpayer to prove
the assessors' general policy and standards of assessment
of other properties or classes of property in relation to full,
fair cash value. If the taxpayer establishes improper as-
sessment of such number of Framingham properties (at
less than fair cash value and on a basis discriminating
against the taxpayer) as to support an inference that there
was a scheme of such assessment, then the assessors will
have the burden of going forward to show that there has
been no scheme of discriminatory assessment. If, on all
the evidence, such a scheme is established, the taxpayer may
be granted an abatement (of the general character sug-
gested in the *Sioux City Bridge Co.* case) which will make
the taxpayer's assessment proportional to other assess-
ments,[10] on a basis which reaches results as close as is prac-

---

[10] If, as in the *Bettigole* case, 343 Mass. 223, 227, it should be shown that
several different percentages of full, fair cash value were employed in valuing
different classes of property, the principle discussed in the *Sioux City Bridge*

ticable to those which would have followed application by the assessors of the proper statutory assessment principles. No practical difficulties should result in the future from the statutory procedure as now construed. Particularly will this be so if assessors assess each item of taxable property at its full, fair cash value to the best of their ability and pursuant to their honest judgment.

4. Upon properly amended pleadings, the offered evidence should have been admitted,[11] and the substance of requests for rulings numbered 9, 12, 13, 17, and 18, and other similar requests not quoted above (see fn. 3, *supra*), should have been given. The decision is reversed and the case is remanded to the board for further proceedings consistent with this opinion.

*So ordered.*

---

*Co.* case would logically require reduction of the assessment of a taxpayer against whom there had been discrimination so that such taxpayer's assessment would be proportional to the assessments of the class of property valued at the lowest percentage of fair cash value. It is not necessary for us now to consider whether patterns of illegal and discriminatory assessment may exist which are so complicated as to require the use of remedies which would treat the whole tax levy as invalid.

[11] We assume that the evidence concerning the general revaluation of Framingham properties in 1957 will in some manner be linked up with the 1960 and 1961 assessments. The offer of proof as to this portion of the offered testimony is deficient.