ALEXANDER S. BEAL, trustee, *vs.* BOARD OF ASSESSORS
OF BOSTON.

Suffolk.  March 11, 1983. — July 11, 1983.

Present: WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Taxation,* Real estate tax: abatement, assessment, value.  *Evidence,*
Value.

Language in G. L. c. 58A, § 12A, providing that if, on an appeal relative
to the assessed value of property brought within three years after a
determination of value by the Appellate Tax Board, it appears that the
assessed value is greater than the value as so determined, the assessors
shall have the burden of satisfying the board that the increased value
was warranted, refers to the board's initial determination of value and
not to any adjusted valuation used in a disproportionate assessment
case; thus, in the circumstances of an appeal from the denial of a tax
abatement by a city's assessors, § 12A did not shift the burden of proof
from the taxpayer.  [650-653]

APPEAL from a decision of the Appellate Tax Board.

*Nathan T. Wolk* for the taxpayer.

*John T. Gaffney,* Special Assistant Corporation Counsel,
for the defendant.

O'CONNOR, J.  Alexander S. Beal, trustee (taxpayer), ap-
peals pursuant to G. L. c. 58A, § 13, from a decision of the
Appellate Tax Board (board) upholding the refusal of the
board of assessors of Boston (assessors) to abate real estate
taxes assessed on the taxpayer's property for fiscal year 1980.
The taxpayer's appeal, is premised on the applicability of
G. L. c. 58A, § 12A, inserted by St. 1943, c. 430.  We hold
that the provisions of G. L. c. 58A, § 12A, do not apply to
the taxpayer's appeal, and therefore we affirm the decision
of the board.

On January 1, 1979, the assessment date for fiscal year
1980, see G. L. c. 59, §§ 11, 21, 38, the taxpayer owned a

parcel of real estate at 25-35 Doane Street (also known as 15 Broad Street), Boston. A ten-story office building stood on the parcel of approximately 7,589 square feet. The assessors valued the property at $520,000, and assessed a tax thereon in the amount of $131,508, based on a rate of $252.90 per thousand dollars of value. The taxpayer's application for an abatement of the tax was denied by the assessors, and the taxpayer appealed to the board. After a hearing, the board issued a decision for the assessors, and thereafter issued its findings of fact and report.

The taxpayer's contention before the board and before this court is that the assessors' valuation of the property for fiscal year 1980 was excessive. In support of this claim, the taxpayer introduced at the hearing before the board copies of decisions of the board granting the taxpayer abatements of taxes assessed for fiscal years 1976, 1977, 1978, and 1979. The abatements were granted because the taxpayer's property had been assessed at a higher percentage of fair cash value than had other classes of property in the city. Under the law governing the taxpayer's appeals for fiscal years 1976 to 1979, a taxpayer whose property was disproportionately assessed as a result of a city's practice of assessing different classes of property at varying percentages of fair cash value was entitled to an abatement, calculated by reducing the fair cash value of the property to the percentage of fair cash value at which the most favored class of property was assessed. See *Keniston* v. *Assessors of Boston,* 380 Mass. 888, 906 (1980); *Tregor* v. *Assessors of Boston,* 377 Mass. 602, 602, 609-612, cert. denied, 444 U.S. 841 (1979); *Assessors of Weymouth* v. *Curtis,* 375 Mass. 493, 501 (1978); *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 377-378 n.10 (1965) (dictum).[1]

Thus, the board calculated the taxpayer's abatements for fiscal years 1976-1979 by first determining the fair cash

---

[1] For fiscal years 1980-1983, see G. L. c. 58A, § 14; St. 1979, c. 797, § 24; *Keniston* v. *Assessors of Boston,* 380 Mass. 888, 890, 891-892 & nn.5, 6, 904, 905-906 (1980).

value of the taxpayer's property.  Its determinations ranged between $863,298 and $928,307.  The board then reduced the fair cash value of the property to a stated percentage, which represented the percentage of fair cash value at which the most favored class of property had been assessed. That percentage was 26.8% in fiscal years 1976 to 1978, and 22.4% in 1979.  The reduced or adjusted fair cash value of the property ranged between $204,453 and $248,786.  The board next calculated the amount of the tax that should have been paid by multiplying the adjusted value of the property by the tax rate.  The abatement granted the taxpayer was equal to the difference between the tax as so calculated and the tax imposed by the assessors.[2]

The taxpayer also introduced expert opinion testimony as to the value of the property for fiscal year 1980.  The expert testified that there was no substantial difference between the income and expenses of the taxpayer's property in fiscal year 1980 and the income and expenses of the property in fiscal year 1977, and that, in his opinion, the property had a value of $695,490 in fiscal year 1980.  The board found that the expert's opinion was unsupported, and consequently gave it "little or no weight."  The taxpayer does not challenge the board's rejection of his expert's testimony.

The evidence of value presented by the assessors consisted of the expert testimony of an assistant assessor of the city of Boston.  Using the market data approach, the expert testified that, in his opinion, the value of the taxpayer's property was $2,920,000.

The taxpayer's appeal is grounded on the contention that G. L. c. 58A, § 12A, inserted by St. 1943, c. 430, applies

[2] The board's calculations can be expressed in tabular form as follows:

| Fiscal Year | Assessed Valuation | Fair Cash Value | Per Cent of Fair Cash Value | Adjusted Fair Cash Value |
|---|---|---|---|---|
| 1976 | $520,000 | $928,307 | 26.8% | $248,786 |
| 1977 | 520,000 | 863,298 | 26.8% | 231,364 |
| 1978 | 520,000 | 863,298 | 26.8% | 231,364 |
| 1979 | 520,000 | 912,738 | 22.4% | 204,453 |

to this case,[3] and that, consequently, the assessors had the burden of satisfying the board that the assessed value of the property was warranted. The taxpayer contends that that burden was not satisfied. The taxpayer concedes that if § 12A does not apply, his appeal must fail. This is because, in appeals to which § 12A does not apply, "the taxpayer bears the burden of proof on the issue of overvaluation." *Foxboro Assocs.* v. *Assessors of Foxborough*, 385 Mass. 679, 684 (1982). The taxpayer admits that he introduced no evidence of value which was credited by the board.

General Laws c. 58A, § 12A, inserted by St. 1943, c. 430, provides in pertinent part: "If, at a hearing of an appeal relative to the assessed value of property brought within three years after a determination by the appellate tax board of the value thereof, it appears that the assessed value is greater than the value as so determined, the burden shall be upon the appellee [assessors] to satisfy the board that the increased value was warranted . . . ." The taxpayer's appeal does relate to the assessed value of property and was brought within three years after a determination by the board of the property's value. The hearing of the taxpayer's appeal to the board was held on March 5, 1981, and the board's decisions which determined the property's value for fiscal years 1976 to 1979 were all issued on or after March 17, 1979. Thus, the applicability of c. 58A, § 12A, depends on whether the assessed value of the taxpayer's property for fiscal 1980 was greater than the value of the property as determined by the board in any of its decisions for the fiscal years 1976-1979.

The assessed value of the taxpayer's property for fiscal 1980 was $520,000. The fair cash value of the property as determined by the board in its prior decisions within the three-year period described by G. L. c. 58A, § 12A, ranged

---

[3] General Laws c. 58A, § 12A, was amended by St. 1978, c. 580, § 13. As amended, § 12A applies to property taxes assessed for fiscal year 1981. St. 1978, c. 580, § 40, as amended by St. 1979, c. 578, § 2. Since the taxpayer's appeal relates to taxes assessed for fiscal year 1980, we construe G. L. c. 58A, § 12A, as it read prior to the 1978 amendment.

between $863,298 and $928,307. The fair cash value of the property as reduced to the percentage of value at which the most favored class of property was assessed ranged between $204,453 and $248,786. Thus, the applicability of G. L. c. 58A, § 12A, to the taxpayer's appeal depends on whether the determination of value referred to in that section is the board's initial determination of fair cash value, or the adjusted determination of value used in disproportionate assessment cases.

Section 12A by its terms applies only to appeals "relative to the assessed value of property brought within three years after a determination by the appellate tax board of the value thereof." The section makes no mention of a determination by the board of a property's adjusted value. It speaks only of the board's "determination . . . of . . . value." We conclude, therefore, that § 12A, inserted by St. 1943, c. 430, applies only to those cases in which the assessed value of the taxpayer's property is greater than the board's unadjusted determination of the property's value during the three-year period described by § 12A.

This conclusion squares not only with the language of § 12A, but also with apparent legislative intent. When § 12A was inserted into the General Laws in 1943, see St. 1943, c. 430, this court did not recognize an administrative remedy for taxpayers who were victims of nonproportional, discriminatory assessment practices. See *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 372-374 (1965); *Lowell* v. *County Comm'rs of Middlesex,* 152 Mass. 372, 375 (1890). In applications for abatement brought at that time, the only question was whether the taxpayer's property had been overvalued. If the property had not been overvalued, the taxpayer had no cause for complaint. *Id.* Thus, when § 12A was enacted, there would have been no occasion for the board to reduce the fair cash value of a property to a stated percentage to account for disproportionate, discriminatory assessment practices. Consequently, the Legislature must have intended the determination contemplated by § 12A to be the board's unadjusted deter-

mination of a property's fair cash value. Our holding in *Shoppers' World, Inc.* v. *Assessors of Framingham, supra* at 376-378, that taxpayers may pursue an administrative remedy under G. L. c. 59, §§ 59, 64, and 65, for dispropor-tionate, discriminatory assessment practices, did not change the meaning of the statute.

Since the assessed value of the taxpayer's property was not greater than the value of the property as determined by the board during the three-year period described by G. L. c. 58A, § 12A, that section does not apply to the taxpayer's appeal. Consequently, the burden remained on the tax-payer to prove that the property had been overvalued. See *Foxboro Assocs.* v. *Assessors of Foxborough,* 385 Mass. 679, 684 (1982); *Schlaiker* v. *Assessors of Great Barrington,* 365 Mass. 243, 245 (1974). The taxpayer concedes that the evi-dence he produced before the board was not sufficient to satisfy this burden.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*