HARRY AXELROD *vs*. BOARD OF ASSESSORS OF BOXBOROUGH.

Suffolk. March 5, 1984. — July 12, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Taxation,* Real estate tax: assessment, abatement.

In proceedings for abatement of real estate taxes, the Appellate Tax Board
   did not err in computing the applicable equalized tax rate under G. L.
   c. 58A, § 14, for fiscal year 1980 by using the 1978 equalized value,
   where literal compliance with the requirement that the equalized value
   for "the year next preceding" the year in question be used was impossible
   because equalization studies are done only in even-numbered years.
   [462-465]
No constitutional rights of a taxpayer seeking abatement for disproportionate
   property tax assessments were violated by use of the 1978 equalized
   value in calculating the equalized tax rate for fiscal year 1980. [463-465]

APPEAL from a decision of the Appellate Tax Board.

*Joseph J. Hurley (Stuart R. Malis* with him) for the taxpayer.

*Lawrence L. Blacker (Carmen L. Durso,* Town Counsel,
with him) for the defendant.

HENNESSEY, C.J. In this appeal from the Appellate Tax
Board (board), the taxpayer argues that the board's interpreta-
tion of G. L. c. 58A, § 14,[1] denies him a constitutionally man-

[1] General Laws c. 58A, § 14, as amended by St. 1980, c. 261, §§ 8, 9,
provides in pertinent part: "In cases where the appellate tax board finds that
a taxpayer is being assessed disproportionately with respect to other prop-
erties within the same city or town, the board shall compute the measure
of damages in the following manner:

"(1) by computing an equalized tax rate by dividing the total taxes as
assessed for that city or town for the year for which the finding was made
by the fair cash value of the city or town, which shall in no event be higher
than the equalized value as finally reported to the general court pursuant

dated adequate remedy for a disproportionate tax assessment. We uphold the board's interpretation of the statute and we affirm the board's decision.

On January 1, 1979, the taxpayer was the owner of an improved parcel of land in Boxborough. For fiscal year 1980, the board of assessors of Boxborough (assessors) valued the property at $5,114,000, and assessed taxes, at a rate of $41 per thousand, of $209,674. The tax bill was mailed on January 15, 1980. An application for abatement was timely filed with the assessors and was denied. An appeal was timely filed with the board. The board determined that, as of January 1, 1979, the fair cash value of the property was $7,213,000. Under G. L. c. 58A, § 14, the board calculated an equalized tax rate of $29.20 per thousand and, applying that rate to the fair cash value, determined that $210,619.60 in taxes should have been paid. Inasmuch as only $209,674 in taxes had been assessed, the board denied the taxpayer an abatement.

The only issue on appeal is the correctness of the equalized tax rate of $29.20 per thousand calculated by the board. General Laws c. 58A, § 14, directs that the equalized tax rate be calculated by dividing the total taxes assessed for the town for the fiscal year in question by the fair cash value of the town. However, in no event is the divisor to exceed the equalized value of the town as determined "in the year next preceding the year" in question.

The board made no findings as to the total taxes assessed or the fair cash value of the town. It appears from the record, however, that the board used figures of $1,400,000 for the total taxes assessed and $47,910,000 (which was the equalized value of the town as determined in 1978) for the fair cash value of the town. These figures produce an equalized tax rate of $29.20 per thousand.

to section ten C of chapter fifty-eight for that city or town in the year next preceding the year for which the finding was made.

"(2) by applying the rate as computed in accordance with subsection one to the fair cash value of the property and thereby determine the taxes which should have been paid.

"(3) by subtracting the amount of taxes which should have been paid from those actually paid or assessed."

The taxpayer's argument runs roughly as follows. Because equalization studies are done only in even-numbered years, no equalized value of the town was determined "in the year next preceding" fiscal year 1980, and it is therefore impossible to comply with the literal terms of the statute. If the equalized value of the town as determined in 1980 ($67,180,000) were used instead of the 1978 value ($47,910,000), then the equalized tax rate would be only $20.84 per thousand, and the taxpayer would be entitled to an abatement of approximately $59,000. The taxpayer suggests two reasons why we should interpret the statute to permit use of the 1980 equalized value in these circumstances. First, he points out, quite correctly, that the equalized tax rate is intended to approximate the value obtained by multiplying the average assessment ratio by the tax rate, and argues that, because the product of the fiscal year 1980 tax rate ($41 per thousand) and the 1980 average assessment ratio (0.523), which product is $21.40 per thousand, is more nearly consistent with the equalized tax rate obtained by using the 1980 equalized value than with that obtained by using the 1978 equalized value, the 1980 equalized value must be used in order to effectuate the statutory intent. Second, the taxpayer argues that because he is constitutionally entitled to an adequate remedy for disproportionate assessment, and because use of the 1980 equalized value results in an abatement whereas use of the 1978 equalized value does not, an interpretation of the statute to permit use of the 1980 equalized value is constitutionally required.[2]

The taxpayer's first argument amounts to an attempt to bootstrap to the use of the 1980 equalized value by using the 1980 average assessment ratio. It is true that the equalized tax

---

[2] Not having raised a constitutional objection below, the taxpayer does not directly present a constitutional issue here. Instead, his claim is that the board misconstrued the statute; his argument is that its construction renders the statute unconstitutional. If we were to conclude that the statute as construed is unconstitutional, but that the construction is nonetheless correct, the taxpayer would have no right to object to the application of the statute to him because he failed to raise the constitutional issue below. This fact is immaterial, however, because we conclude that the statute is constitutional as construed.

rate is intended to approximate the product of the average assessment ratio and the tax rate.[3] See *Keniston* v. *Assessors of Boston,* 380 Mass. 888, 892 n.6 (1980). But, for 1980, the relevant average assessment ratio is that as of January 1, 1979. See G. L. c. 59, § 21. The figure that the taxpayer would have us use is that as of January 1, 1980. See G. L. c. 58, § 9. When the average assessment ratio as of January 1, 1979, is used, the result is very nearly equal to the equalized tax rate found by the board.[4]

The taxpayer's second argument is equally unavailing. A taxpayer whose property has been disproportionately assessed is constitutionally entitled to an adequate remedy for any injury caused thereby. See *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 373 (1965). It does not follow, however, that every taxpayer whose property is disproportionately assessed is necessarily entitled to an abatement. The Legislature has established the method of determining whether a taxpayer has been injured, see G. L. c. 58A, § 14, and we have upheld that method. *Keniston* v. *Assessors of Boston, supra.* We recognize that in order to ensure precise proportionality the Legislature would have to have provided for a determination of the fair cash value of the town on the assessment date for the fiscal year in question, in this case January 1,

---

[3] The Legislature has decided that the fair cash value to be used in calculating the equalized tax rate cannot exceed the most recently determined equalized value of the town. See G. L. c. 58A, § 14 (1). We upheld that decision in *Keniston* v. *Assessors of Boston,* 380 Mass. 888, 899-903 (1980). In an era of increasing property values, the actual fair cash value of the town on the assessment date for an even-numbered fiscal year will exceed the equalized value found one year earlier. Thus, the equalized tax rate will exceed the product of the average assessment ratio (based on the actual fair cash value of the town) and the actual tax rate.

[4] Average assessment ratios, like equalized values, are determined only in even-numbered years. However, the average assessment ratio as of January 1, 1979, can be calculated. If the town raised $1,400,000 at a rate of $41 per thousand, then the assessed value must have been $34,146,000. The ratio of this value to the fair cash value of the town, assuming, as the statute requires, that the fair cash value does not exceed the 1978 equalized value ($47,910,000), is 0.713. The product of this ratio and the tax rate is $29.23, which approximately equals the equalized tax rate found by the board.

1979. But the Legislature has provided for such determinations only in even-numbered years. We acknowledge that, assuming a constantly increasing fair cash value of the town, use of the 1978 equalized value of the town results in a smaller abatement than would use of the actual fair cash value of the town as of January 1, 1979. But, on the other hand, use of the 1980 equalized value would result in a windfall to the taxpayer. In light of the difficulty of making a determination of the fair cash value of a town, see *Keniston* v. *Assessors of Boston, supra* at 901, the Legislature could rationally determine that administrative convenience requires that the Department of Revenue make such determinations only in alternate years, and that practicality does not permit burdening the Appellate Tax Board with making fair cash value determinations for years in which the Department of Revenue does not.[5] The Legislature can limit the abatement remedy on a rational basis. *Id.* at 899. "Even as limited by [§ 14], the abatement remedy aims at the 'equality by "approximation"' that the Constitution requires." *Id.* at 896-897. Abatement procedures need only reach "results as close as is practicable to those which would have followed application by the assessors of the proper statutory assessment principles." *Shoppers' World, Inc.* v. *Assessors of Framingham, supra* at 377-378. Finally, we note that the taxpayer has made no effort to show what the fair cash value of the town was on January 1, 1979, or to show that the 40% increase in the equalized value of the town between 1978 and 1980 was not attributable to some extraordinary circumstance occurring during 1979. In short, the taxpayer has failed to demonstrate any inadequacy of the abatement remedy afforded him.

Because we are swayed by neither of the taxpayer's arguments, we adhere to the conclusion reached in *Newbury St.*

---

[5] The remedy provided by G. L. c. 58A, § 14, is of an interim nature and has already expired, except as it applies to pending cases involving fiscal years that ended on or before June 30, 1983. St. 1979, c. 797, § 24. This fact reinforces our conclusion that the possibility of unfairness resulting from the statutory formula does not rise to the level of a constitutional violation. See *Keniston* v. *Assessors of Boston, supra* at 890 n.4.

*Assocs.* v. *Assessors of Boston,* 386 Mass. 513, 515-516 (1982). For odd-numbered fiscal years, for which the assessment date is January 1 of the preceding even-numbered year, the equalized value to be used in calculating damages under G. L. c. 58A, § 14, is the value determined for that same January 1. (For example, for fiscal year 1981, for which the assessment date is January 1, 1980, the 1980 equalized value, which is determined as of January 1, 1980, is to be used.) For even-numbered fiscal years, for which the assessment date is January 1 of the preceding odd-numbered year, the equalized value for January 1 of the preceding even-numbered year is to be used. For fiscal year 1980 the assessment date was January 1, 1979, and thus the 1978 equalized value is to be used. In this the board was correct.

*Decision of the Appellate Tax Board*
*affirmed.*